**Florence WIENER, as Executrix of the Estate of Samuel Wiener, Plaintiff,**

v.

**Joseph P. NAPOLI, Esq., Morris J. Eisen, Esq., Morris J. Eisen, P.C., and Morris J. Eisen & Joseph P. Napoli, Defendants.**

**No. CV 90–3592 (ADS).**

United States District Court, E.D. New York.

March 29, 1991.

Rivkin, Radler, Bayh, Hart & Kremer by Edward J. Hart, James P. Nunemaker, Jr., James B. Rather, Frank J. Giliberti, Uniondale, N.Y., for plaintiff.

Zaslowsky Marx & Nelson by Jack Nelson, New York City, for defendants Morris J. Eisen, P.C. and Morris J. Eisen.

Joseph P. Napoli, New York City, defendant pro se and for defendants Morris J. Eisen and Joseph P. Napoli.

## MEMORANDUM AND ORDER

SPATT, District Judge.

The defendants' motions to dismiss the Complaint raise the novel issue of whether the defendants' alleged fraudulent activity as trial counsel for the plaintiff's attorney-decedent in tort litigation, is sufficient to state a claim for relief under the Racketeering Influenced Corrupt Organization Act, 18 U.S.C. § 1961, *et seq.* ("RICO").

## I.  BACKGROUND

This action stems from financial arrangements between Samuel Wiener, an attorney at law, and the defendants-attorneys, whereby the defendants acted as trial counsel for Wiener. According to the Complaint, by letter agreement dated May 24, 1982, Wiener retained defendant Napoli as trial counsel with respect to fourteen civil actions and agreed to either (1) an equal division of the fees, or (2) a one-third Wiener/two-thirds Napoli division of the fees.

The agreement also provided that Wiener would be reimbursed for any disbursements he incurred in connection with the actions. The Complaint also alleges that Napoli practiced individually and also in association and partnership with defendants Eisen and Eisen & Napoli.

After Wiener's death on August 20, 1982, Florence Wiener, as the executrix of Mr. Wiener's estate, retained defendant Napoli and the other defendants as attorneys in an additional ninety-nine of Wiener's cases (*see* Complaint, Schedule A). Wiener's estate and Napoli entered into separate agreements with respect to each case with regard to the division of fees. In the Complaint the "Eisen Enterprise" is apparently defined as Napoli individually and the other named defendants, as an association (*see* Complaint, ¶ 18). The Complaint provides, in part, as follows:

"¶ 26. Since the transfer of the cases to the EISEN ENTERPRISE under the agreements entered into prior and subsequent to decedent's death, the fees and disbursements due from the cases set forth in Schedule A have not been paid either in full or, in many instances, not at all.

¶ 27. Defendants, both individually and as part of the EISEN ENTERPRISE, have in several instances concealed the resolution and settlement of cases from plaintiff and failed to remit monies due.

¶ 28. Defendants, both individually and as part of the EISEN ENTERPRISE, have forged indorsements on settlement drafts made payable to the Estate of SAMUEL WIENER and failed to remit fees and disbursements due thereunder.

¶ 29. Defendants, individually and as part of the EISEN ENTERPRISE, agreed to hold harmless an insurance carrier from any claim by decedent's estate to a lien on settlement proceeds if settlement drafts would be made payable to EISEN, P.C. and not to EISEN, P.C. and the Estate of SAMUEL WIENER, jointly, in order to conceal the fact of settlement from plaintiff.

¶ 30. Defendants have also failed to file closing statements with the New York State Office of Court Administration in a further effort to conceal settlements and the nonpayment of fees, in whole or in part, to plaintiff."

The Complaint sets forth five claims: (1) fraud; (2) accounting based on a constructive trust; (3) moneys had and received; (4) RICO (18 U.S.C. § 1962[c]); and (5) breach of contract. Subject matter jurisdiction is based on 28 U.S.C. § 1331, in that the RICO claim "arises under the ... laws ... of the United States." The Complaint asserts pendent jurisdiction with regard to the remaining four claims which are state law causes of action.

As to the RICO claim, the Complaint alleges that defendants "NAPOLI, EISEN, EISEN, P.C." and "EISEN & NAPOLI" constitute an "enterprise," the "EISEN ENTERPRISE," within the meaning of 18 U.S.C. § 1961(4), and that "NAPOLI, EISEN, EISEN, P.C." and "EISEN & NAPOLI" participated in the affairs of the "EISEN ENTERPRISE" through a "pattern of racketeering" by numerous acts of alleged mail fraud in violation of 18 U.S.C. § 1341.

In particular, the Complaint alleges the following:

"¶ 56. Defendants formulated and implemented a fraudulent scheme to defraud plaintiff out of fees and disbursements due under the various written agreements referred to herein by concealing settlements, forging estate endorsements, inducing settlement checks to issue which did not account for the estate's continuing interests in settlement proceeds, by failing to file closing statements with the appropriate state authorities setting forth fees and disbursements due, all as set forth more fully in the claims for relief stated above.

¶ 57. The fraudulent scheme continues to this day and threatens to continue inasmuch as a number of the legal matters in which the defendants substituted as counsel in place of decedent SAMUEL WIENER are cases and matters which are still open, awaiting final resolution through either trial, settlement or other disposition.

¶ 58. On or about the dates set forth below, the defendants unlawfully, willfully and knowingly, and for the purpose of furthering and executing their fraudulent scheme, did place and cause to be placed in the United States Post Offices and authorized depositories for mail matter, and did cause to be delivered by mail, according to the directions thereon, certain mail matter to be sent and delivered by the United States Postal Service, all in violation of 18 U.S.C. § 1341, as follows:"

Thereafter, under the headings "Date," "Transmitting Party," "Receiving Party," and "Description," the Complaint lists 32 mailings by the defendant dating from November 11, 1982 to September 11, 1990. The "Description" of these mailings include "settlement draft," "fee check" or "check," "letter enclosing general release," and "closing statement." The list does not allege what statements or omissions in the mailings were fraudulent.

In addition, the Complaint alleges that each mailing constitutes a "racketeering act," and that "[t]he mail frauds directed at plaintiff were neither isolated nor sporadic, but were related to one another by their promotion of the common purpose of misappropriation of the estate's money." The Complaint also alleges the following:

"¶ 61. Those uses of the mail constituted a pattern of racketeering activity by the repeated presentation of checks to plaintiffs representing underpayment, the receipt by defendants of settlement drafts and funds from insurance companies, defendants' use of the mails to forward settlement papers to clients and defense law firms, and defendants' receipt of mails setting forth the terms of and, invoking performance under, hold harmless agreements they gave to settling parties to the lawsuits and claims against fee claims by SAMUEL WIENER's estate."

## II. DEFENDANT'S MOTIONS TO DISMISS

Defendants Morris J. Eisen, Esq. and Morris J. Eisen, P.C. move to dismiss the

Complaint pursuant to Rules 9(b), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, on five grounds: (1) the Complaint fails to plead fraud with the requisite particularity; (2) the alleged RICO claim fails to state a claim upon which relief can be granted; (3) the alleged state law claims fail to state a claim upon which relief can be granted; (4) the alleged fraud claim is barred by the applicable statute of limitations; and (5) the alleged state law claims cannot be sustained by pendent jurisdiction. Defendants Joseph P. Napoli, Esq. and Morris J. Eisen & Joseph P. Napoli also move to dismiss the Complaint, pursuant to Rules 9(b), 12(b)(1), 12(b)(6) and 12(b)(7) of the Federal Rules of Civil Procedure, on the grounds that the alleged RICO claim fails to state a claim upon which relief can be granted and that the alleged state law claims cannot be sustained by pendent jurisdiction.

## III. STANDARD OF REVIEW

■■■ The applicable standard of review on a motion to dismiss is that "the court should not dismiss the complaint pursuant to Rule 12(b)(6) unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'" (*Goldman v. Belden*, 754 F.2d 1059, 1065 [2d Cir.1985] [quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 [1957]]; *see also Branum v. Clark*, 927 F.2d 698, 705 [2d Cir.1991]). In assessing the sufficiency of the Complaint, the Court must accept the allegations of the Complaint as true (*see Branum v. Clark, supra; Procter & Gamble Co. v. Big Apple Industrial Bldgs., Inc.*, 879 F.2d 10, 14 [2d Cir.1989], *cert. denied,* —— U.S. ——, 110 S.Ct. 723, 107 L.Ed.2d 743 [1990]; *North Star Contracting Corp. v. Long Island R.R. Co.*, 723 F.Supp. 902, 905 [E.D.N.Y. 1989]), and must construe all reasonable inferences in favor of the plaintiff (*see Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 [1974]). A motion to dismiss is addressed solely to the face of the pleading, and "[t]he court's function ... is not to weigh the evidence that might be presented at a trial but mere-

ly to determine whether the complaint itself is legally sufficient" (*Goldman v. Belden, supra,* 754 F.2d at p. 1067).

■■■ In addition, the Court may not consider matters submitted outside the pleading at issue, unless, according to Rule 12(b), notice is given to all parties that the motion to dismiss is being converted to a motion for summary judgment and the parties are afforded a reasonable opportunity to present additional pertinent material (*see Krijn v. Pogue Simone Real Estate Co.*, 896 F.2d 687, 689 [2d Cir.1990]). This rule is mandatory as to Rule 12(b)(6) motions (*see Festa v. Local 3 Int'l Brotherhood of Elec. Workers*, 905 F.2d 35, 38 [2d Cir. 1990]). In this regard, the defendants Morris J. Eisen, Esq. and Morris J. Eisen, P.C. by Stuart Perry, Esq. as well as the plaintiff submitted affidavits which are replete with material which is not within the pleading at issue. Accordingly, the Court declines to consider these affidavits in determining the instant motions.

## IV. DISCUSSION

### A. *Governing Law*

Section 1962(c) of RICO makes it unlawful to participate in the conduct of the affairs of an "enterprise" through a "pattern of racketeering activity" in interstate or foreign commerce. (*See Sedima, S.P. R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 [1985] ["A violation of § 1962(c) ... requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."].) A "pattern of racketeering activity" must include the commission of at least "two acts of racketeering activity" within a ten year period (*see* 18 U.S.C. § 1961[5]). Mail fraud is an "act of racketeering activity" under RICO (*see* 18 U.S.C. § 1961[1][B]). 18 U.S.C. § 1964(c) expressly creates a private right of action for any person injured by reason of a section 1962 violation.

Defendants' motions to dismiss are directed at the allegations in the Complaint pleading two or more predicate acts of mail fraud. The federal mail fraud statute reads as follows:

"[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of *false or fraudulent pretenses, representations, or promises ...* for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service...." (18 U.S.C. § 1341 [emphasis supplied])

■ A showing of either intentional fraud or reckless indifference to the truth is required, and "[a]cts done inadvertently, mistakenly, or in good faith without an intent to defraud do not satisfy the requirements of the statute" (*O'Malley v. New York City Transit Authority*, 896 F.2d 704, 706 [2d Cir.1990]). As was recently articulated by Chief Judge Platt, the applicable standard in pleading mail fraud as a predicate act under RICO is as follows:

"Mail fraud requires proof of (1) a scheme or artifice to defraud or obtain money by means of false pretenses, representations or promises; (2) a use of the mails for the purpose of executing the scheme; and (3) a specific intent to defraud either by devising, participating in or abetting the scheme.... to establish mail fraud the plaintiffs must prove: 1) that the defendants 'caused' the mailing, i.e., acted 'with knowledge that the use of the mails will follow in the ordinary cause of business, or where such use can reasonably be foreseen, even though not actually intended' ..., and 2) that the mailing was for the purpose of executing the scheme or, in other words 'incident to an essential part of the scheme'...."
(*Morrow v. Black*, 742 F.Supp. 1199, 1205 [E.D.N.Y.1990])

Further, "[i]t is the use of mail ... in furtherance of the scheme—not the fraudulent scheme itself—that is the predicate act." (*Lou v. Belzberg*, 728 F.Supp. 1010, 1025 [S.D.N.Y.1990]) Each separate use of the mail in furtherance of the fraudulent scheme constitutes a separate predicate racketeering act. (*Beauford v. Helmsley*, 865 F.2d 1386, 1392 [2d Cir.1989] [*en banc*], *vacated*, 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584 [1989], *adhered to*, 893 F.2d 1433 [2d Cir.1989], *cert. denied*, — U.S. —, 110 S.Ct. 539, 107 L.Ed.2d 537 [1989].)

■ Allegations of the predicate act of mail fraud, which necessarily includes the element of scienter, must pass muster under Fed.R.Civ.P. 9(b), which requires that:

"In all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

■ One of the primary purposes of the specificity requirement of Rule 9(b) "is to insure that the defendant receives fair notice of plaintiff's claim, and is thus able to prepare a defense" (*Hutton v. Klabal*, 726 F.Supp. 67, 72 [S.D.N.Y.1989] [citing *Di Vittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 [2d Cir. 1987]]), as well as to protect a defendant's reputation and to avoid strike suits (*see Ross v. Bolton*, 904 F.2d 819, 823 [2d Cir. 1990]; *Philan Ins., Ltd. v. Frank B. Hall & Co.*, 712 F.Supp. 339, 342 [S.D.N.Y.1989]; *United States v. Rivieccio*, 661 F.Supp. 281, 290 [E.D.N.Y.1987]). "These concerns are even more immediate in civil RICO actions, because such suits 'implicate the reputation interests of defendants accused of committing racketeering offenses.'" (*Atlantic Gypsum Co., Inc. v. Lloyds International Corp.*, 753 F.Supp. 505, 512 [S.D.N.Y.1990] [quotation omitted].)

"[F]actual allegations must give rise to a 'strong inference' that the defendants possessed the requisite fraudulent intent," which can be established by alleging "facts showing a motive for committing fraud and a clear opportunity for doing so.... [or] by identifying circumstances indicating conscious behavior by the defendant, ... though the strength of the circumstantial allegations must be correspondingly greater" (*Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 [2d Cir.1987] [citations omitted], *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 [1988];

*accord Ouaknine v. MacFarlane*, 897 F.2d 75, 80 [2d Cir.1990] ["there must be some factual basis for conclusory allegations of intent"]).

■ Finally, if multiple defendants are involved in the alleged fraud, it is especially important that the fraud be particularized as to each one of them (*see, e.g., Lou v. Belzberg, supra*, 728 F.Supp. at p. 1022; *United States v. Rivieccio, supra; Laterza v. American Broadcasting Co.*, 581 F.Supp. 408, 413 [S.D.N.Y.1984]).

## B. *The RICO Claim*

■ Accepting the allegations of the Complaint as true, and construing all reasonable inferences in the plaintiff's favor, the Court finds that the Complaint fails to satisfy Rule 9(b) with respect to its allegations of mail fraud.

The Complaint fails to set forth with any particularity the fraudulent acts, statements or omissions made by the defendants. Specifically, the Complaint fails to set forth with any particularity the "false or fraudulent pretenses, representations, or promises" which are the required elements of a "mail fraud" predicate act. The Complaint (1) does characterize the general purpose of the alleged fraudulent scheme, *i.e.* to prevent the plaintiff from receiving her appropriate share of the attorneys' fees, (2) does characterize the general means by which the defendants allegedly defrauded the plaintiff, *i.e.* by concealing settlements, forging estate endorsements or failing to file closing statements with the appropriate state authorities, and (3) does identify certain "mail matter," *i.e.* Complaint, ¶ 58 (listing 32 mailings). However, the Complaint (1) fails to set forth any specific fraudulent acts, statements or omissions made by the defendants, and (2) fails to describe how the mail matter furthered or executed the defendants' scheme.

Although the Complaint identifies the general *modus operandi* of the alleged fraud—concealing settlements, forging estate endorsements or failing to file closing statements—the Complaint does not identify a single fraudulent statement or omission with regard to a single settlement document, estate endorsement or closing statement relating to a particular civil action. For example, while the Complaint contains the serious charge that the defendants "forged endorsements or settlement drafts," no particulars are set forth.

Since the Complaint fails to specify the "circumstances" of the alleged fraud, it fails to comport with Rule 9(b). (*See, e.g., Official Publications, Inc. v. Kable News Co.*, 692 F.Supp. 239, 244–46 [E.D.N.Y. 1988] [district court found that simple, conclusory allegations of fraudulent practices through the mails were insufficient to state a RICO mail fraud claim], *affirmed in part, reversed in part*, 884 F.2d 664, 668 [2d Cir.1989].)

In sum, while the Complaint does allege a motive for the defendants undertaking fraudulent activity—namely, a scheme to deprive the Estate of Samuel Wiener of its rightful share of fees due Wiener—and a "clear opportunity" for them to commit fraud (*see Beck v. Manufacturers Hanover Trust Co., supra*, 820 F.2d at p. 49), there are no misrepresentations set forth from which a *fraudulent* intent could be inferred. (*Compare Ouaknine v. MacFarlane, supra*, 897 F.2d at pp. 80–81 [fraudulent intent inferred from statements in offering memorandum and partnership agreement]; *Beck v. Manufacturers Hanover Trust Co., supra*, 820 F.2d at p. 50 [fraudulent intent inferred from statements in "valuation" of collateral and failure to make Hart–Scott–Rodino filing].)

Illustrative of the defect in the Complaint, it contains no allegations of fraudulent misrepresentations to any carrier, to any client or to Florence Wiener, as Executrix. Where the Complaint describes certain routine business communications, such as the "settlement draft," "fee check" or "check," "letter enclosing general release," and "closing statement" as fraudulent mailings, it fails to set forth a single fact in support of such a conclusion. Innocuous business communications are insufficient to lead to a reasonable inference of fraudulent intent. (*See O'Malley v. New York City Transit Auth., supra*, 896 F.2d at p. 707 [Court held that five letters which were

"routine, innocuous, business communications" did not provide a factual basis for a conclusory allegation of intent to defraud]; *Atlantic Gypsum Co. v. Lloyds International Corp., supra,* 753 F.Supp. at p. 513 ["Routine business communications that show only a dispute between the parties do not lead to a reasonable inference of fraudulent intent."].)

Stated simply, if the defendants did not pay the Estate the shares of the fees agreed upon, this would possibly form the basis for an action for breach of contract and/or moneys had and received and/or conversion. To raise these basic causes of action to a RICO claim requires the additional elements, among others, of mail fraud, namely "false or fraudulent pretenses … representations, or promises." (*See* 1A L. Sand, *Modern Federal Jury Instructions,* ¶ 44.01, Instruction 44–3 at p. 44–7 [1991]) The Complaint does not contain any such specific allegations and is therefore insufficient, as a matter of law.

Finally, while the Complaint alleges a RICO claim against all of the defendants, it fails to particularize each defendant's fraudulent activity. (*See Lou v. Belzberg, supra,* 728 F.Supp. at p. 1024 [quoting *Di Vittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 [2d Cir. 1987]] ["In addition to providing each defendant with a meaningful opportunity to prepare his defenses, 'the complaint should inform each defendant of the nature of his alleged participation in the fraud.' "].)

In sum, the predicate acts are not pled with sufficient particularity as to the alleged mail fraud and as to each defendant's participation, and therefore plaintiff's RICO allegation fails to state a claim upon which relief can be granted.

\* \* \*

Since the Court finds that the plaintiff has failed to plead two acts of "mail fraud" racketeering activity with the requisite particularity so as to state a claim for relief under RICO as to any defendant, the Court does not address the other elements of the RICO claim alleged in the Complaint, *i.e.* a "pattern" (*see* 18 U.S.C. § 1961[5] [at least two acts of "racketeering activity, occur-

ring within 10 years of each other"]; *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 [1989] [emphasis in original] ["to prove a pattern of racketeering activity a plaintiff … must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity"]; *United States v. Alkins,* 925 F.2d 541, 553 [2d Cir.1991] ["the law of this circuit is that the acts that constitute the pattern of racketeering activity must be related and continuous or pose the threat of continuity"]) and an "enterprise" (*see* 18 U.S.C. § 1961[4] [includes any "individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity"]; *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 [1981] [must prove "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit"]; *Bennett v. United States Trust Co.,* 770 F.2d 308, 315 [2d Cir.1985], *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 [1986] [the "enterprise" must be separate and distinct from the "person" sued under RICO]).

Accordingly, the motions by the defendants to dismiss the Fourth Claim alleging a RICO cause of action are granted.

## C. *The Pendent State Law Claims*

■ The Court does not find any exceptional circumstances which would require it to retain jurisdiction of the plaintiff's four remaining causes of action which are state law claims. Since the parties' citizenship is not diverse, the Court therefore dismisses the four remaining state law claims for lack of subject matter jurisdiction. (*See West Hartford v. Operation Rescue,* 915 F.2d 92, 104 [2d Cir.1990] [quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ] ["it is well settled that 'if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well' "]; *Ouaknine v. MacFarlane, supra,* 897 F.2d

at pp. 83–84 ["having determined that no exceptional circumstances justified retaining the state-law claims alone," the district court did not abuse its discretion in dismissing state law claims for lack of pendent jurisdiction after dismissing RICO claim]; *Hughes v. Patrolmen's Benev. Ass'n,* 850 F.2d 876, 881 [2d Cir.1988] ["[i]f, during the course of trial, it becomes apparent that the federal claims are discernibly meritless, both the federal and pendent state law claims must be dismissed"], *cert. denied,* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 [1988]; *O'Brien v. Price Waterhouse,* 740 F.Supp. 276, 284 [S.D.N.Y.1990] ["As all of plaintiffs' federal claims have been dismissed, the Court no longer has jurisdiction over plaintiffs' state law claims"].)

## V. CONCLUSION

The defendants' motions to dismiss the Complaint is granted, without prejudice to the plaintiff filing an amended complaint within thirty (30) days from the date of this Memorandum and Order. (*Branum v. Clark, supra,* at 705 ["Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated"]; *cf. Ronzani v. Sanofi S.A.,* 899 F.2d 195, 198 [2d Cir.1990] [quoting 2A Moore & Lucas, *Moore's Federal Practice* ¶ 12.14 at 12–99 [2d ed. 1989] ["[w]hen a motion to dismiss is granted, 'the usual practice is to grant leave to amend the complaint' ... [and] refusal to grant leave must be based on a valid ground"]].)

In the event the plaintiff does file an amended complaint, her counsel should be alerted to a similar pleading defect in the First Claim For Relief sounding in fraud. Nowhere in the first cause of action are any specific facts set forth in support of the claim of "implied and express representations" as stated in Paragraph 35 of the Complaint.

In the event the plaintiff does not timely file an amended complaint, the defendants shall submit an Order, on notice, for the entry of Judgment in favor of the defendants.

SO ORDERED.