Florence WIENER, as Executrix of the Estate of Samuel Wiener, Plaintiff,

v.

Joseph P. NAPOLI, Esq., Morris J. Eisen, Esq., Morris J. Eisen, P.C., and Morris J. Eisen & Joseph P. Napoli, Defendants.

No. CV–90–3592 (ADS).

United States District Court, E.D. New York.

Aug. 10, 1991.

Rivkin, Radler, Bayh, Hart & Kremer (Edward J. Hart, James P. Nunemaker, Jr., James B. Rather and Frank J. Giliberti, of counsel), Uniondale, N.Y., for plaintiff.

Zaslowsky Marx & Nelson (John Hayes, Morris J. Eisen, P.C. and Morris J. Eisen, of counsel), New York City, for defendants.

Joseph P. Napoli, New York City, pro se and for defendants Morris J. Eisen and Joseph P. Napoli.

## OPINION AND ORDER

SPATT, District Judge.

The defendants' motion to dismiss the amended complaint in this case raises the issue of whether the defendants' alleged fraudulent activity as trial counsel for the plaintiff's attorney-decedent in tort litigation is sufficient to state a claim for relief under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. Taking the allegations of the amended complaint as true for the purposes of these motions, and for the reasons discussed below, the Court finds that the plaintiff has sufficiently pled two predicate acts of "mail fraud" racketeering activity as well as two acts of bank fraud with the requisite particularity so as to state a claim for relief under RICO. Therefore, the defendants' motions to dismiss the amended complaint are denied.

## I. PRELIMINARY STATEMENT

A description of the factual background of this action is set forth in detail in this Court's memorandum decision, which ruled on the parties' earlier motions to dismiss the complaint (*see Wiener v. Napoli,* 760 F.Supp. 278 [E.D.N.Y.1991]). At that time, the defendants moved to dismiss on the grounds, *inter alia,* that the plaintiff had failed to plead fraud with the requisite particularity and that the alleged RICO violation failed to state a claim upon which relief could be granted. The defendants, Joseph P. Napoli, Esq. and Morris J. Eisen & Joseph P. Napoli also moved to dismiss the complaint, pursuant to Rules 9(b), 12(b)(1), 12(b)(6) and 12(b)(7) of the Federal Rules of Civil Procedure on the grounds that the alleged state law claims could not be sustained by pendent jurisdiction. The Court agreed with the defendants and dismissed the complaint, without prejudice to the plaintiff filing an amended complaint within thirty (30) days. The plaintiff's amended complaint is now before the Court.

## II. FACTUAL BACKGROUND

Although set forth at length at 760 F.Supp. 278, the Court briefly reiterates only those facts relevant to the instant motions to dismiss.

This action stems from financial arrangements between Samuel Wiener, an attorney at law, and the defendants-attorneys, whereby the defendants acted as trial counsel for Wiener. By letter agreement, Wiener retained defendant Napoli as trial counsel in a number of civil actions and made specific arrangements for fees and disbursements. The amended complaint alleges that Napoli practiced individually and also in association and partnership with defendants Eisen and Eisen & Napoli.

After Wiener's death on August 20, 1982, Florence Wiener, as the Executrix of Samuel Wiener's estate, retained Napoli and the other defendants as attorneys in a substantial number of additional cases. The plaintiff alleges that the defendants took advantage of a personal and confidential relationship with her as Executrix of her husband's estate, and that such a violation constituted a breach of fiduciary duty as well as a fraudulent scheme to cheat and defraud the plaintiff of monies belonging to the Estate of Samuel Wiener. According to the plaintiff, this scheme was effectuated through racketeering activities prohibited by 18 U.S.C. §§ 1961–1968 which included acts of mail fraud (18 U.S.C. § 1341) and bank fraud (18 U.S.C. § 1344). The object of this racketeering activity was to obtain by fraudulent means certain fees and disbursements due to the estate from the settlement of cases for which the defendants provided legal representation after Samuel Wiener's death.

The amended complaint provides, in part, as follows:

"¶ 29. After the transfer of the files, and pursuant to the fraudulent scheme and racketeering activities set forth herein, defendants committed the following acts, concealments and breaches, without limitation:

(a) A continuing failure to advise of settlements or recoveries and resulting failure to remit fees and disbursements due or to remit fees in proper amounts. Defendants had a duty to so advise and remit fees both under the confidential relationship between the parties and by reason of the covenant of good faith implied into the fee arrangements. This act was committed by all of the defendants. For example, no status has been provided on the following matters since transfer: ... (list of affected clients follows) ...

(b) The forging of estate endorsements upon settlement drafts made payable to one or more of the defendants and the Estate of Samuel Wiener. One known example of forged endorsements upon settlement drafts made payable to 'M. Eisen & S. Wiener' is in connection with a matter entitled 'V. Jones v. The City of New York.' The City issued two payment warrants in settlement of the case, both payable to 'M.J. Eisen & S. Wiener' in 1987. Both drafts (nos. 758453 and 758462) are endorsed by 'Morris J. Eisen' and 'Sam Wiener,' not-

withstanding that decedent was deceased approximately five years at the time. Plaintiff was never presented said drafts for endorsement and has never received the estate's portion of the fee and disbursement, due and owing.

(c) By advising prospective settlement defendants that settlement drafts should be made out only to EISEN, P.C. and that hold harmless agreements would be provided as to any claim that the WIENER Estate may have against the settlement proceeds. One known specific instance pertains to the matter entitled 'Haber v. Carlma Associates' where Eisen, P.C. agreed to hold harmless Crum & Forster Commercial Insurance from any attorney lien which may be asserted by the estate from the settlement of said case. Said agreement is confirmed by Crum & Forster to defendants pursuant to Crum & Forster's letter of September 11, 1990 to Mr. Chris Caputo, 'Morris J. Eisen, Attorneys' ...

(e) By preparing, mailing and filing closing statements of cases which understated the fees due to the estate. This act was performed by EISEN, P.C. under the direction of NAPOLI and EISEN. Examples of this practice are contained in closing statements obtained from Eisen, P.C. concerning the 'Quinones v. Pepsico' matter, the 'Patricia Crispino' matter, the 'Philip Schultz v. Daniels' matter, the 'Ancona v. Cohen' matter and many other matters.

(f) By failing to file closing statements with the New York State Office of Court Administration in an effort to conceal the terms of settlements and fees due the WIENER Estate. This act was performed by EISEN, P.C., the law offices of EISEN & NAPOLI, and EISEN and NAPOLI as partners, individually, depending on what entity handled a particular matter. Examples of this are the 'Virginia Faro v. DiBenedetto' matter, the 'Faustein v. Dendy' matter, the 'Lescaille v. 360 Bedford Market, Inc.' matter, and others unknown at this time...."

The amended complaint sets forth five claims for relief: (1) RICO, 18 U.S.C. § 1962(c) [including mail fraud and bank fraud]; (2) common law fraud; (3) accounting and constructive trust; (4) monies had and received; and (5) breach of contract. In contrast to the original complaint, the plaintiff has set forth specific factual allegations in support of these claims, an example of which is cited below.

A. *Acts of Mail Fraud*

"¶ 35. On or about the dates set forth below, the defendants unlawfully, willfully and knowingly, and for the purpose of furthering and executing their fraudulent scheme, did place and cause to be placed in the United States Post Offices and authorized depositories for mail matter, and did cause to be delivered by mail, according to the directions thereon, certain mail matter to be sent and delivered by the United States Postal Service, all in violation of 18 U.S.C. § 1341, as follows:

(A) Melvina Smith, Administratrix of the Estate of *Valeane Jones v. The City of New York*

(a) Pursuant to agreement in August 1982, defendant NAPOLI agreed to share with SAMUEL WIENER the fees on the above-noted matter on a 50–50 basis. Said agreement was on behalf of himself and all of the defendants.

(b) In furtherance of the agreement, the matter was handled by MORRIS J. EISEN & JOSEPH P. NAPOLI.

(c) Upon resolution of the matter, the Honorable Marie M. Lambert, Surrogate, New York County, issued a 'Decree Authorizing Compromise and Settling Account,' dated October 26, 1984, which specifically ordered that the defendant City of New York pay to 'Morris J. Eisen, P.C.' and 'Samuel Wiener,' attorneys for plaintiffs, the sums of $1,894.13 in disbursements and $12,701.96 in fees.

(d) Pursuant to said decree, the City of New York issued its payment draft nos. 758453 and 758462 to 'M.J. Eisen & S. Wiener' about July 10, 1987.

(e) As set forth more fully in paragraph 29(b) *supra*, and paragraphs 43–49, *infra*, said drafts were never presented for endorsement to the Estate and no payment made to the Estate for fees due.

(f) As set forth more fully in the complaint at ¶¶ 29(b) and 43–49, said endorsement of 'S. Wiener' was forged by defendants.

(g) Upon information and belief, in furtherance of said fraud, defendant NAPOLI mailed or caused to be mailed a closing statement to both the client, Melvina Smith, and to the Office of Court Administration which falsely stated that a fee in the amount of $4,233.99 was paid to the Estate. Said mailing and fraudulent statement was intended as a cover-up of the nonpayment to the Estate in order to falsely represent compliance with the order of Surrogate Lambert and a settling of account to the client.

(h) The information upon which said belief is based as to NAPOLI's mailing of the fraudulent matter is a series of documents obtained from defendants' offices which include a closing statement prepared on behalf of 'Morris J. Eisen/Joseph P. Napoli, Esqs.' which states a copy was forwarded to the client on August 31, 1987, and an affidavit dated August 31, 1987 for Joseph P. Napoli's signature for submission to the Office of Court Administration in connection with the late filing of a retainer statement."

In all, plaintiff cites seventeen instances of similar alleged acts of mail fraud. Thereafter, the amended complaint alleges the following:

"42. Those uses of the mail constituted a pattern of racketeering activity by the repeated presentation of checks to plaintiffs representing underpayment, misrepresentations that the underpayments were the Estate's actual share of fees, requests by defendants for and receipt of settlement drafts and funds from insurance companies, which failed to account for the Estate's interest in the settlement proceeds, defendants' use of the mails to forward closing statements which misrepresented that payments were made when they in fact were not, and defendants' causing the use of mails

setting forth the terms of and, invoking performance under, hold harmless agreements they gave to settling parties to the lawsuits and claims against fee claims by SAMUEL WIENER's estate."

## B. Bank Fraud

The plaintiff alleges an additional predicate act under RICO based on bank fraud in violation 18 U.S.C. § 1344(b).[1] Citing defendant's acquisition of funds under the custody and control of the 20 Pine Street branch of Chemical Bank, the plaintiff alleges forged endorsements on two payment drafts from the City of New York:

"43. In connection with the case entitled *V. Jones v. The City of New York*, defendants committed two separate acts of Bank Fraud under 18 U.S.C. § 1344(b) in that defendants obtained funds under the custody and control of Chemical Bank, 20 Pine Street, New York, New York, by forging endorsements on checks payable 'S. Wiener,' as set forth more fully below.

44. Pursuant to agreement, NAPOLI agreed to pay 50% of the fee due from the Jones mater[sic].

The agreement was entered into by NAPOLI on behalf of all of the defendants.

45. Upon settlement of the case, the defendants received two payment warrants/drafts from the city of New York, as follows:

(i) Draft no. 758453, payable to 'M.J. Eisen & S. Wiener,' dated July 10, 1987, in the amount of $1,894.13; and

(ii) Draft no. 758462, dated July 10, 1987, payable to 'M.J. Eisen & S. Wiener,' in the amount of $12,701.96.

46. Both checks were endorsed by 'Morris J. Eisen' and 'Sam Wiener' and deposited into account no. 104–219–0426 of MORRIS J. EISEN, P.C. at Irving Trust Company, New York upon payment by Chemical Bank.

47. As to each check, the endorsement of 'Sam Wiener' was forged in that

1. Although the plaintiff continues to refer to 18 U.S.C. § 1344 "(b)," it is assumed that the references are to 18 U.S.C. § 1344 "(2)" which reflects the statutory language used by the plaintiff.

(i) Samuel Wiener was deceased five years and (ii) plaintiff never endorsed said drafts.

48. Each of said forgeries constituted a separate act of Bank fraud per § 1344(b) in that under each draft, monies under the control and custody of Chemical Bank were obtained by EISEN, P.C. under false pretenses.

49. Said fraudulent endorsements furthered the fraudulent scheme and racketeering activity since plaintiffs to this day have been deprived of said monies."

### III. DEFENDANTS' MOTIONS TO DISMISS

Defendants Morris J. Eisen, Esq. and Morris J. Eisen, P.C. move to dismiss the amended complaint pursuant to Rules 8, 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure on four grounds: (1) the amended complaint fails to plead fraud with requisite particularity; (2) the amended complaint fails to give fair notice of the claim asserted; (3) the alleged RICO claim fails to state a claim upon which relief can be granted; and (4) the alleged state law claims cannot be sustained by pendent jurisdiction. These defendants also contend that the amended complaint contains a newly pleaded act of financial institution fraud, noting that at the time of the incident alleged, the "so-called predicate act was not yet an act prohibited by 18 U.S.C. § 1961" (see Defendants' Memorandum of Law, pp. 22–23). On that basis, defendants claim there was no violation of Section 1962 and hence the plaintiff does not have standing to establish a RICO violation.

Defendant Joseph P. Napoli cross-moves to dismiss the amended complaint, pursuant to Rules 9(b), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on the same grounds alleged by the other defendants and adds that the plaintiff's state law claims are barred by the statute of limitations.

### IV. STANDARD OF REVIEW

"The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at trial, but merely to determine whether the complaint itself is legally sufficient" (*Festa v. Local 3 Intern. Broth. of Elec. Workers*, 905 F.2d 35, 37 [2d Cir.1990]). It is well settled that "the court should not dismiss the complaint pursuant to Rule 12(b)(6) unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'" (*Goldman v. Belden*, 754 F.2d 1059, 1065 [2d Cir.1985] quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 [1957]; *see also Branum v. Clark*, 927 F.2d 698 [2d Cir.1991]). In assessing the sufficiency of the amended complaint, the Court must accept the allegations of the pleading as true (*see Branum v. Clark, supra; Procter & Gamble Co. v. Big Apple Indust. Bldgs., Inc.*, 879 F.2d 10, 14 [2d Cir. 1989], *cert. denied*, 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 [1990]; *North Star Contracting Corp. v. Long Island R.R. Co.*, 723 F.Supp. 902, 905 [E.D.N.Y.1989]), and must construe all reasonable inferences in favor of the plaintiff (*see Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 [1974]). A motion to dismiss is addressed solely to the face of the pleading, and "[t]he court's function ... is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient" (*Goldman v. Belden, supra*, 754 F.2d at p. 1067).

In addition, the Court may not consider matters submitted outside the pleading at issue, unless, according to Rule 12(b), notice is given to all parties that the motion to dismiss is being converted to a motion for summary judgment and the parties are afforded a reasonable opportunity to present additional pertinent material (*see Krijn v. Pogue Simone Real Estate Co.*, 896 F.2d 687, 689 [2d Cir.1990]). This rule is mandatory as to Rule 12(b)(6) motions (*see Festa v. Local 3 Int'l Brotherhood of Elec. Workers*, 905 F.2d 35, 38 [2d Cir. 1990]).

In this regard, the defendants Morris J. Eisen, Esq. and Morris J. Eisen, P.C., have again submitted an affirmation which is replete with material not within the pleading at issue, including but not limited to allegations that the agreements between the parties were invalid fee-splitting arrangements which are void as a matter of public policy. Accordingly, the Court declines to consider this affirmation in determining the instant motions.

## V.  DISCUSSION

### A.  *Governing Law*

#### (i) Mail Fraud

Section 1962(c) of RICO makes it unlawful to participate in the conduct of the affairs of an "enterprise" through a "pattern of racketeering activity" in interstate or foreign commerce (*see Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 [1985] ["A violation of § 1962(c) ... requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."]) A "pattern of racketeering activity" must include the commission of at least "two acts of racketeering activity" within a ten year period (*see* 18 U.S.C. § 1961[5]). Mail fraud is an "act of racketeering activity" under RICO. 18 U.S.C. § 1964(c) expressly creates a private right of action for any person injured by reason of a section 1962 violation.

#### (ii) Bank Fraud

Plaintiffs have alleged "racketeering activity" under 18 U.S.C. § 1961 based on bank fraud. 18 U.S.C. § 1961(1)(B) defines as racketeering activity "any act which is indictable under any of the following provisions of title 18, United States Code ..." One of those provisions is section 1344, "relating to financial institution fraud," which is defined as follows:

"Whoever knowingly executes, or attempts to execute, a scheme or artifice—
    (1) to defraud a financial institution; or
    (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both."

18 U.S.C. §§ 1344, 1961(1)(B).

The defendants claim that bank fraud was not an enumerated racketeering activity prohibited by § 1961(1)(B) at the time of the alleged fraud, noting that "financial institution fraud" was only added to the statute by amendment in 1989. See 18 U.S.C.A. § 1961, Par. (1) Pub.L. 101–73 inserted "section 1344 (relating to financial institution fraud)." Neither party provides any authority in support of retroactive or prospective application of the statutory change.

### B.  *Retroactivity*

#### (i) Historically

When a court is asked to address a challenge to a particular rule's retroactive application, it begins with the assumption that "the rule of law in force at the time a decision is rendered is the law to be applied" (*Lund v. Shearson/Lehman/American Exp., Inc.*, 852 F.2d 182, 183 [6th Cir.1988]). The Supreme Court has stated that this practice is "overwhelmingly the norm, and is in keeping with the traditional function of the courts to decide cases before them based upon their current understanding of the law" (*James B. Beam Distilling Co. v. Georgia*, —— U.S. ——, ——, 111 S.Ct. 2439, 2443, 115 L.Ed.2d 481 [1991]). Until recently, most courts have applied the three-factor test set out in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971):

"First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed ... Second, it has been stressed that 'we must * * * weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and

whether retrospective application will further retard its operation' ... Finally, we have weighed the inequity imposed by retroactive application for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our case for avoiding the "injustice or hardship" by a holding of non retroactivity'" *Id.* at pp. 106–107, 92 S.Ct. at 355 [citation omitted].

In the *Chevron Oil* case, the Court held that the Louisiana one-year statute of limitations in a personal injury case should not be applied retroactively because the case was one of first impression (concerning the Lands Act), which, in effect, overruled a long line of decisions by the Court of Appeals for the Fifth Circuit. *Id.* at p. 107, 92 S.Ct. at 355–56. *Chevron Oil* made it clear that that there were circumstances in which it would be appropriate to apply a decision in a completely prospective manner.

In line with the *Chevron Oil* decision, it has generally been held that the "new pronouncement of a legal principle must be a 'clear break' from past precedent or with what is recognized as settled authority" (*Lund, supra,* 852 F.2d at 183), otherwise, the rule will automatically be applied retrospectively (*United States v. Johnson,* 457 U.S. 537, 550 n. 12, 102 S.Ct. 2579, 2587 n. 12, 73 L.Ed.2d 202 [1982]).

In the instant case, the incorporation of the bank fraud provision of 18 U.S.C. § 1344 into the list of prohibited racketeering activities in the RICO statute does not introduce a new crime. The bank fraud statute was originally added to Title 18 of the United States Code in 1984, prior to the incidents charged in the amended complaint (*see* 18 U.S.C. § 1344). The incorporation itself does not "overrule past precedent on which litigants may have relied" nor does it "decide an issue whose resolution was not clearly foreshadowed" as set forth in the *Chevron Oil* test.

At the time of the alleged offenses, bank fraud was clearly a statutorily punishable offense. Consequently, the defendants were on notice that such a violation consti-

tuted a crime and could subject them to potentially heavy penalties. To argue that the defendants regulated their conduct based on the fact that there were no associated *civil* penalties attached to § 1344 on the date of the alleged acts is disingenuous.

### (ii) Recent Decisions

The Supreme Court narrowed the *Chevron Oil* test in its most recent decision on the retroactivity of statutory changes. In *James B. Beam Distilling Co. v. Georgia, supra,* — U.S. —, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) (O'Connor, J., dissenting), a strongly divided Court ruled 6–3, with three concurring opinions, that its ruling in *Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984), should apply retroactively to claims arising on facts antedating that decision (*id.* 111 S.Ct. at 2441).

In *Bacchus,* the Court had held that a Hawaii law which imposed an excise tax on imported liquor at a higher rate than that imposed on liquor manufactured from home-grown products violated the Commerce Clause (*Bacchus Imports, Ltd. v. Dias, supra*). Georgia had a similar law which the petitioner in *Beam Distilling* sought to have declared unconstitutional. The petitioner was seeking a refund of taxes it had paid under Georgia's law for the preceding three years (*James B. Beam Distilling Co. v. Georgia, supra,* 111 S.Ct. at p. 2442). The state court declared the statute unconstitutional but refused to apply its ruling retroactively based on the *Chevron Oil* test. The Supreme Court reversed and remanded the case, stating that "retroactivity is properly seen in the first instance as a matter of choice of law, 'a choice ... between the principle of forward operation and that of relation backward.'" *James B. Beam Distilling v. Georgia, supra, quoting Great Northern R. Co. v. Sunburst Oil & Refining Co.,* 287 U.S. 358, 364, 53 S.Ct. 145, 148, 77 L.Ed. 360 [1932]).

In writing for the majority, Justice Souter, joined by Justice Stevens, discussed retroactivity in the context of choice of law and outlined three ways in which the choice of law problem may be resolved:

"First, a decision may be made *fully retroactive*, applying both to the parties before the court and to all others by and against whom claims may be pressed, consistent with res judicata and procedural barriers such as statutes of limitations. This practice is overwhelmingly the norm ... and is in keeping with the traditional function of the courts to decide cases before them based upon their best current understanding of the law ... Second, there is the *purely prospective* method of overruling, under which a new rule is applied neither to the parties in the law-making decision nor to those others against or by whom it might be applied to conduct or events occurring before that decision.... This Court has, albeit infrequently, resorted to pure prospectivity, see *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971); ... Finally, a court may apply a new rule in the case in which it is pronounced, then return to the old one with respect to all others arising on facts predating the pronouncement. This method, which we may call *modified* or *selective, prospectivity*, enjoyed its temporary ascendancy in the criminal law during a period in which the Court formulated new rules, prophylactic or otherwise, to insure protection of the rights of the accused." *Id.* 111 S.Ct. at 2443–2444 [citation omitted; emphasis supplied].

Comparing the criminal context, Justice Souter went on to comment that the Court "abandoned the possibility of selective prospectivity" in *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987), "even where the new rule constituted a 'clear break' with previous law" (*id.*). Though the issue of retroactivity in the civil area was not disposed of in *Griffith*, Justice Souter notes that "selective prospectivity appears never to have been endorsed in the civil context" (*James B. Beam Distilling v. Georgia, supra, citing American Trucking Assns. Inc. v. Smith*, — U.S. —, 110 S.Ct. 2323, 110 L.Ed.2d 148 [1990].

In the case of the Georgia statute, the Supreme Court held that it was error to refuse to apply a rule of federal law retroactively after the case announcing the rule had already done so (*id.*). The Court further stated that principles of equality and *stare decisis* prevailed over any claim based on a *Chevron Oil* analysis.

Referring again to *Griffith v. Kentucky, supra*, the Court found that "*Griffith* cannot be confined to the criminal law. Its equality principle, that similarly situated litigants should be treated the same, carries comparable force in the civil context" (*id.*). In effect, the Court has substantially limited the third prong of the *Chevron Oil* test:

"Because the rejection of modified prospectivity precludes retroactive application of a new rule to some litigants when it is not applied to others, the *Chevron Oil* test cannot determine the choice of law by relying on the equities of the particular case" (*id.* 111 S.Ct. at p. 2447 [citation omitted]).

However, the Court did note that it was not speculating as to the "bounds or propriety of pure prospectivity" (*id.* at p. 2448).

In a lengthy dissent, joined by Justices Rehnquist and Kennedy, Justice Sandra Day O'Connor criticized the majority for discarding the *Chevron Oil* analysis (*id.* at p. 2451). According to Justice O'Connor, to hold that all decisions must be applied retroactively in all cases "ignores a well-settled precedent in which this Court has refused repeatedly to apply new rules retroactively in civil cases". *James B. Beam Distilling Co. v. Georgia, supra*, at 2451). In concluding that nonretroactivity was the correct choice in this case, Justice O'Connor stated that "a proper application of the *Chevron Oil* test" to the *Beam Distilling* case would clearly have established that the *Bacchus* rule "should not be applied retroactively" because it established a new principle of law (*id.* at p. 2453).

◼ In the instant case, the defendants disclaim any liability for bank fraud and argue that the RICO provision for bank fraud is not retroactive. However, applying the analysis of the Supreme Court in *Beam Distilling, supra*, it is clear that the amendment of 18 U.S.C. § 1961(1)(B) to

include § 1344 does have retroactive effect and should be applied to the litigants before this Court.

Even if this Court were to apply a *Chevron Oil* analysis to the present case, the same result would be reached. Under the first prong of the *Chevron Oil* test, the amendment to the RICO statute would have to have established a new principle of law in order to be applied prospectively. This threshold requirement has not been met because the amendment did not "overrule" any precedent on which litigants may have relied, nor does it decide an issue whose resolution was not clearly foreshadowed. The history of the RICO statute comports with the eventual inclusion of bank fraud and retroactive application of the amended provision. The RICO statute makes it unlawful to participate in the conduct of the affairs of an "enterprise" through a pattern of "racketeering activity" in interstate or foreign commerce (*see Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 [1985] ). Retroactive application of the bank fraud provision furthers the operation and legislative intent of the underlying statute. Finally, the retroactive application of the bank fraud section does not create substantial inequitable results. There has been no "creation" of a new offense but merely the inclusion of an existing offense as an "act of racketeering activity" under a specific provision of the RICO statute.

## C. *The RICO Claim for Mail Fraud*

As noted, on a Rule 12(b)(6) and Rule 9(b) motion, the Court must limit its analysis to the four corners of the complaint (*Kopec v. Coughlin*, 922 F.2d 152, 154–55 [2d Cir. 1991] ). Although citing both Rules as the basis for their motion to dismiss, the defendants have addressed their challenges to the "particularity" requirement of Rule 9(b). Specifically, the defendants allege that the amended complaint "attempts to put a veneer of particularity on the allegations of the original Complaint" (*see* Defendant's Affirmation in Support of Motion to Dismiss the Amended Complaint) and fails to provide facts which support a reasonable inference of fraudulent intent.

Previously, this Court held that the original Complaint sufficiently characterized (1) the general purposes of the alleged fraudulent scheme, (2) the general means by which the defendants allegedly defrauded the plaintiff, and (3) the identified "mail matter," (*Wiener v. Napoli, supra* at p. 284). The Court also found that the Complaint did allege a motive for the defendants having undertaken fraudulent activity—namely, a "scheme to deprive the Estate of Samuel Wiener of its rightful share of fees due Wiener—and a 'clear opportunity' for them to commit fraud" (*id.*).

■ Accepting the allegations of the amended complaint as true, and construing all reasonable inferences in the plaintiff's favor, the Court finds that the Amended Complaint satisfies Rule 9(b) with respect to its allegations of mail fraud.

Rule 9(b) is designed to provide the defendant with fair notice of the plaintiff's claim so as to enable the defendant to prepare a suitable defense (*see Ross v. Bolton*, 904 F.2d 819, 823 [2d Cir.1990] ). Therefore, "fraud allegations ought to specify the time, place, speaker, and content of the alleged misrepresentations" (*Farberware, Inc. v. Groben*, 764 F.Supp. 296, 301 [S.D.N.Y.1991] ), quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 [2d Cir.1987] ).

■ In the instant case, the plaintiff has alleged both mail and bank fraud as predicate acts. The defendants rely on a generalized claim that the allegations lack the requisite particularity to survive a Rule 9(b) challenge. In alleging mail fraud, the plaintiff must set forth "the content of the items mailed and specify how each of the items was false and misleading" (*Official Publications, Inc. v. Kable News Co.*, 692 F.Supp. 239, 245 [S.D.N.Y.1988], *aff'd in part and rev'd in part*, 884 F.2d 664 [2d Cir.1989] ).

The allegations against the defendants include: failure to advise the plaintiff of settlements or recoveries; failure to remit fees and disbursements due and owing;

failure to remit fees in proper amounts; forging of estate endorsements upon settlements drafts; advising prospective settlement defendants that drafts should be made payable only to the defendants; preparing, mailing and filing understated fees due the estate; failure to file closing statements with the New York State Office of Court Administration, etc. (*see* amended complaint, ¶ 29[a]—[j]).

There are numerous examples of the specific time, place, participants, and contents of the alleged misrepresentations in the amended complaint. One example has already been outlined in "Valeane Jones v. City of New York" (Point II(A), *supra*). In addition, in ¶ 35(c) of the amended complaint, plaintiffs allege, in an action captioned "Haber v. Carlma Associates" that in a letter sent from their New York office [place] dated September 24, 1990 [time], the defendants sent a closing statement to a client, Cindy Haber, which fraudulently stated that a fee was paid to the estate of Mr. Wiener "per agreement" [content of the alleged misrepresentation]. Plaintiff alleges that the closing statement was fraudulent because it made reference to a nonexistent fee payment to the Estate [contents]. In addition, it is also alleged that the mailing of the statement furthered the fraud by "concealing the fact of nonpayment to a Wiener personal friend in hope of inducing forbearance by Haber to contact plaintiff" [contents] (*id*).

In relation to the same case, plaintiff alleges that the defendants agreed to hold harmless Crum & Forster Commercial Insurance, a prospective settlement defendant, from any attorney lien by the estate. This agreement was confirmed by a letter dated September 11, 1990, from Crum & Forster to Mr. Chris Caputo, "Morris J. Eisen, Attorneys" (*see* Amended Complaint, ¶ 29[c]). Plaintiff contends that the hold harmless agreement provided further evidence of concealment of settlement because it served no purpose but to induce a settlement draft which eliminated the estate as a payee.

The District Courts in this Circuit have repeatedly required plaintiffs to "plead the factual basis which gives rise to a 'strong inference' of fraudulent intent" (*O'Brien v. National Property Analysts Partners*, 936 F.2d 674 [2d Cir.1991], *quoting Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 [2d Cir.1990]; *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 [2d Cir.1987], *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 [1988]). The plaintiffs have demonstrated the required scienter in the amended complaint. In sum, the predicate acts are pled with sufficient particularity as to the alleged mail fraud and as to each defendant's participation (*see Atlantic Gypsum Co., Inc. v. Lloyds Intern. Corp.*, 753 F.Supp. 505 [S.D.N.Y.1990]). Therefore, plaintiff's RICO claim withstands scrutiny under Rule 9(b).

### D. *The RICO Claim for Bank Fraud*

The allegations of the bank fraud claim have been laid out in detail in Point II B, *supra*. The two payment drafts in question, dated July 10, 1987, were made payable to "M.J. Eisen & S. Wiener," were endorsed by "Morris J. Eisen" and "Sam Weiner," were deposited in an Irving Trust account in the name of "Morris J. Eisen, P.C." and were drawn from Chemical Bank. The checks reflect an endorsement by "Sam Weiner" despite the fact that Samuel Wiener died in August 1982. Plaintiff executrix alleges that she did not sign for the decedent.

The bank fraud statute permits charging each execution of a scheme to defraud as a separate act (*see U.S. v. Poliak*, 823 F.2d 371 [9th Cir.1987] [defendant who wrote ten separate checks was properly charged with ten separate counts of bank fraud], *cert. denied*, 485 U.S. 1029, 108 S.Ct. 1586, 99 L.Ed.2d 901 [1988]). Under the statutory definition of 18 U.S.C. § 1344, "it is an offense to execute a scheme or artifice to defraud a federally chartered or insured financial institution *or* to obtain money from it 'by means of false or fraudulent pretenses, representations, or promises'" (*U.S. v. Schwartz*, 899 F.2d 243, 246 [3d Cir.1990], *cert. denied*, —— U.S. ——, 111 S.Ct. 259, 112 L.Ed.2d 217

[1990]). It has been held that, since these two provisions are clearly disjunctive, an individual may commit a bank fraud without making false or fraudulent pretenses, representations or promises, "as this is the 'plain meaning' of the statute" (*id.*).

The plaintiff's claim of a violation of 18 U.S.C. § 1344(b) comports with the statutory definition in that the defendants allegedly knowingly executed a scheme to obtain funds under the custody and control of a financial institution by means of false or fraudulent pretenses. For purposes of the bank fraud statute, the terms "scheme" and "artifice" are defined to include any plan, pattern or cause of action, including false and fraudulent pretenses and misrepresentations, intended to deceive others in order to obtain something of value, such as money, from the institution to be deceived (*United States v. Goldblatt,* 813 F.2d 619 [3d Cir.1987]).

The plaintiffs have alleged two predicate acts with sufficient particularity, providing the time, place participants, and contents of the alleged misrepresentations concerning the drafts. If proven, the defendants' actions clearly fall within the bank fraud provision. Interestingly, the defendants have not addressed the merits of the bank fraud claim as failing to state a cause of action, but have relied instead on their argument that a RICO violation for bank fraud could not be found retroactively.

### E. *The Pendent State Law Claims*

Pendent jurisdiction involves additional claims asserted by the plaintiff which have no independent basis for federal jurisdiction (*see United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 [1966]). Under *Gibbs,* if a federal claim is sufficient to confer subject matter jurisdiction over a controversy, then it is discretionary for a court to exercise jurisdiction over state-law claims that do not have an independent basis for jurisdiction, so long as the state and federal claims "derive from a common nucleus of operative fact" (*United Mine Workers of Am. v. Gibbs, supra,* 383 U.S. at p. 725, 86 S.Ct. at 1138). In the instant case, it is clear that the remaining state law claims (i.e., breach of contract) "derive from a common nucleus of operative fact" (*id.*). Consequently, this Court finds that there is a sufficient basis upon which to exercise its pendent jurisdiction to adjudicate those claims.

### F. *Defendant Napoli's Cross–Motion*

Defendant Napoli cross-moves for dismissal of the Amended Complaint based on Rules 9(b), 12(b)(1) and 12(b)(6) and adopts the arguments of his co-defendant. He alleges one additional ground, namely that the plaintiff's state law fraud claim is barred by the statute of limitations. However, defendant Napoli has filed no memorandum of law in support of this contention. In light of this Court's rules, the Court declines to address the cross-motion.

### VI. CONCLUSION

Contrary to the defendant's contention, this Court finds that the amended complaint does state a federal cause of action under 18 U.S.C. §§ 1961 and 1962. For the reasons stated above, the defendants' motion to dismiss the amended complaint pursuant to Rules 8, 9(b), 12(b)(1) and 12(b)(6) is denied.

SO ORDERED.