Gregory **BRANUM**, Plaintiff–Appellant,

v.

Clifford **CLARK**, David Hanson, Paul Szarmach, George Stein, and Ross Geoghegan, Defendants–Appellees.

No. 994, Docket 90–7883.

United States Court of Appeals, Second Circuit.

Argued Jan. 31, 1991.

Decided March 11, 1991.

Catherine E. Stuckart, Binghamton, N.Y., for plaintiff-appellant.

Gregory Branum, Binghamton, N.Y., pro se.

Daniel Smirlock, Asst. Atty. Gen., Albany, N.Y. (Robert Abrams, Atty. Gen. of the State of N.Y., Peter H. Schiff, Deputy Sol. Gen., Nancy A. Spiegel, Asst. Atty. Gen., Albany, N.Y., on the brief), for defendants-appellees.

Before KEARSE, PRATT, and McLAUGHLIN, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff Gregory Branum, a dematriculated graduate student at the State University of New York at Binghamton ("SUNY–Binghamton"), appeals from an August 24, 1990 order of the United States District Court for the Northern District of New York, Thomas J. McAvoy, *Judge*, denying his motion for relief from a judgment entered on April 20, 1990, dismissing his complaint against university officials for damages and equitable relief in connection with his dematriculation. Branum also seeks to appeal from the April 20 judgment itself. On appeal, he contends principally that the court (1) should have viewed his complaint more liberally and declined to dismiss it in light of his then-*pro se* status, (2) should have granted him relief from the judgment because he did not receive adequate notice of the hearing on the motion to dismiss, and (3) should have given him leave to amend the complaint. For the reasons below, we vacate the order and remand to the district court for further proceedings.

## I. BACKGROUND

Branum commenced the present action *pro se* in September 1989. His complaint indicated that from 1976 to 1986, he was a graduate student in the mathematics department at SUNY–Binghamton, receiving an M.A. degree in 1978 and thereafter pursuing a doctorate. The named defendants were the university's president, vice president for academic affairs, vice provost for graduate studies, and the chairmen of the mathematics department and the mathematics graduate program. The focus of the controversy is the difficulty experi-

enced by Branum, a minority student, in being "admitted to candidacy" for the Ph.D. degree, *i.e.*, achieving the status of having passed all requirements for that degree except the most important one, the writing of a dissertation.

A. *The Events According to the* Pro Se *Complaint*

From the complaint, which annexed as exhibits copies of, *inter alia*, memoranda to or from various of the defendants, the following picture can be gleaned. After receiving his M.A. degree in 1978, Branum was encouraged to pursue his doctorate. For the next five years, he experienced difficulty in finding a dissertation advisor (an essential step, according to department officials), in getting lecturing assignments, and in gaining access to university facilities. In 1983, he was assigned an acting advisor, Professor Peter Hilton; according to Hilton, the unduly prolonged process of admitting Branum formally to candidacy for the Ph.D. was not the fault of Branum but was attributable to the fact that there was no one on the SUNY–Binghamton faculty with sufficient expertise on Branum's topic. Nonetheless, by 1985 Branum had made sufficient progress that Hilton recommended his admission to candidacy for the Ph.D.

After receiving this recommendation, the graduate committee of the mathematics department decided to require Branum to take preliminary closed-book examinations, a practice it had abandoned in 1977 as unsound. Though no other student after 1977 had been required to take such examinations, Branum was to be required to take them in order to be admitted to candidacy. Branum protested the requirement, especially in light of certain practical difficulties, and sought to institute a student grievance proceeding. He had inquired as to the availability and effect of such a proceeding, and the university's provost for graduate studies had replied (a) that Branum "would be accorded the same due process given to all students at SUNY–Binghamton, if [he] were to be involved in a grievance situation," and (b) that "students involved in a grievance would not be dismissed from their program by the Graduate School until the on-campus conclusion of due process with respect to their case."

Branum's pleas for a prompt grievance proceeding with respect to the examination requirement apparently fell on deaf ears, and an examination committee was appointed. Nonetheless, no examination was conducted during the 1985–1986 school year; nor was there any grievance hearing during that period. On October 1, 1986, Branum received a notice from the university's vice provost for graduate studies that he was being dismissed from the doctoral program, effective at the end of the spring 1986 semester. Branum had received no prior notice or opportunity to be heard with respect to his dematriculation.

Seeking to reverse this decision, Branum filed a grievance against several faculty members, including the chairman of the mathematics department, defendant David Hanson. In January 1987, a six-person grievance committee was appointed. All of the members of the committee were appointed by Hanson. Further, one of the members was a faculty member then under consideration for tenure, and the key recommendation with respect to his tenure was to be made by Hanson. Two other members of the committee were doctoral candidates whose thesis advisors were two faculty members against whom Branum's grievance was filed. Branum protested the conflicts of interest on the part of these grievance committee members. The complaint attached as exhibits 8 and 9 memoranda from two mathematics department professors also protesting this lack of fairness in the committee membership.

The complaint also annexed a protest from the Graduate Student Organization ("GSO"), both questioning the fairness of the grievance committee and stating that GSO had received reports that the treatment of Branum was the product of racial discrimination. The complaint itself alleged that "[r]acism, both institutional and personal, was marshalled around the admission to candidacy status as an excuse to keep [Branum] from being employed as a lecturer in either the Fall 1986 or Spring

1987 semester." The complaint also alleged that, in contrast to the treatment of Branum, a grievance filed by one of the department's Caucasian graduate students, together with that student's protests of conflict of interest, had been handled promptly.

Apparently all of the protests on Branum's behalf were unsuccessful. The complaint sought a judgment vacating Branum's dematriculation, ordering that he be given a hearing and be reinstated in the doctoral program, and awarding him money damages.

### B. *The Proceedings Leading to the Dismissal of the Complaint*

In December 1989, defendants moved alternatively (1) for dismissal of the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim on which relief may be granted, (2) for a more definite statement pursuant to Fed.R.Civ.P. 8(a), or (3) for summary judgment. In support of their Rule 8(a) and 12(b)(6) motions, defendants argued that Branum had failed to specify the alleged acts of wrongdoing on the part of each defendant. In support of their motion for summary judgment, they argued (1) that exhibits 8 and 9 to the complaint "overwhelmingly suggest that plaintiff was offered an opportunity for a hearing before his dismissal," and "indicate that it was he who refused to pursue these remedies because he did not like the arrangements"; (2) that Branum was "let ... go for academic reasons," and his allegations of racial discrimination were not factually supported; (3) that Branum had failed to identify any acts of defendants indicating bad faith, and (4) that Branum "has made no factual showing even as to the racial minority of which he is supposedly a member."

Branum requested and received an extension of time to oppose the motions or to prepare an amended complaint. In March 1990, he received another extension due to the death of his father. Pursuant to the latter request, the hearing on defendants' motion to dismiss was adjourned to April 27, 1990.

On April 17, however, the district court changed the date for the hearing, advancing it to April 20. Not having a telephone number for Branum, the court sent him notice of the changed date by certified mail. It is undisputed that Branum did not receive the notice until April 21. He had been away earlier in the month and had returned home on April 17; but he had failed to check his mailbox until April 21. Accordingly, he did not receive notice of the changed date of the hearing until after the hearing had been held. He had not submitted any opposition to defendants' motions.

At the April 20 hearing, the district court stated that notice of the changed hearing date had been mailed to Branum by certified mail with a return receipt requested, and that "nothing has come back, indicating that the letter was properly delivered to the plaintiff." (April 20, 1990 Transcript at 3.) The court proceeded to describe the complaint briefly as one that appeared "to assert some sort of a property or liberty interest in continuing on in the doctoral program and states that [Branum] believes that he wasn't afforded due process in connection with the interest he is attempting to assert he had in the continuation of his education." (*Id.* at 4.) The court stated that it would shortly issue a decision dismissing the complaint, possibly disposing of the matter pursuant to Rule 56.

In a Memorandum–Decision and Order dated April 20, 1990, 1990 WL 49294 the court again construed Branum's complaint solely as one for lack of procedural due process:

> sifting through plaintiff's papers, the court discerns what appears to be a claim that plaintiff was denied continuation in the doctoral program without due process of law, i.e., that he was not accorded a fair hearing prior to his "dematriculation" in violation of the 14th amendment.

The court found this claim insufficient on the grounds (1) that a graduate student has no property interest in continuing in the doctoral program beyond the semester for which he has paid tuition, (2) that the grievance procedures adopted by the SUNY–

Binghamton mathematics department "are not State law," and (3) that "the court believe[d] that plaintiff was afforded all the process that was due him," stating that "the record shows, based upon exhibits 8 and 9 submitted by plaintiff, that a grievance committee was formed thereby affording plaintiff the opportunity to present his case." The court concluded that the complaint should be dismissed pursuant to Fed. R.Civ.P. 12(b)(6) and 56. Judgment was entered dismissing the case the same day.

### C. *The Retention of Counsel and the Postjudgment Proceedings*

Upon filing his complaint, Branum had requested the appointment of counsel to assist him; his application had been denied. Thereafter, he apparently had continued to attempt to find an attorney to represent him; he had retained counsel to represent him at the April 27 hearing; he lost that attorney when it was learned that judgment had been entered on April 20. New counsel was found on April 26.

On May 8, 1990, represented by new counsel, Branum moved for "reconsideration" of the court's April 20 order and judgment. The grounds of the motion were that Branum had not received adequate notice of the one-week advancement of the hearing date; that he had managed to secure counsel who was to appear with him on April 27 and who had expected to request an adjournment in order to prepare an amended complaint; that that attorney had bowed out when informed of the court's April 20 decision; and that the attorney now representing Branum had just become involved in the case. The motion requested that the April 20 order be set aside or modified to permit Branum's new counsel to prepare an amended complaint.

In an order dated August 24, 1990 ("August 24 order"), the court denied the motion for reconsideration. Noting that the motion was untimely because it was filed more than 10 days after entry of the judgment, the court denied the motion because it "fail[ed] to articulate a valid reason for this court to grant the relief requested":

The court, clearly recognizing that it must construe a pleading filed by a *pro se* litigant liberally, ... carefully examined the issues presented by the inartful [*sic*] pleading, giving plaintiff every benefit of the doubt, and ultimately determined that plaintiff had failed to state any cognizable claim upon which relief could be granted. It bears noting that plaintiff never submitted any response in any form to the defendants' motion to dismiss although defendants' motion had been adjourned three times to accom[m]odate the plaintiff. Plaintiff, now represented by counsel, readily admits that his "complaint as submitted failed to properly articulate any claim against the Defendants"; moreover, in seeking what is essentially vacatur of the court's prior order and permission to amend the original pleading, plaintiff has not even bothered to summarize for the court what would be the "specific claims" he now wishes "to allege ... in an intelligent manner." The court believes that it has afforded plaintiff every *reasonable* opportunity to demonstrate that he has a valid claim against these defendants.... Permitting plaintiff at this juncture to amend his complaint would, in the court's view, be an exercise in futility....

The court fully adheres to its prior decision and order and denies the present motion for reconsideration.

(Emphasis in original.)

Branum timely filed the present appeal from the order denying reconsideration.

## II. DISCUSSION

On appeal, Branum contends (1) that he was denied due process in the district court when the court advanced the date for hearing on the motion to dismiss his complaint without adequate notice, (2) that under the liberal standards to be applied to *pro se* litigants, his complaint should not have been dismissed, (3) that read with the required liberality, his complaint adequately states a claim upon which relief may be granted, and (4) that the defendants denied him due process in connection with his dematriculation. For the reasons below, we note that most of these contentions are not

directly before us. Nonetheless, we conclude that, in all the circumstances, the judgment should be vacated and the matter remanded for further proceedings.

### A. *Appellate Jurisdiction*

Initially, we confront a problem as to the scope of our jurisdiction on the present appeal. The final judgment was entered in the district court on April 20, 1990. Ordinarily, to be timely, a notice of appeal must be filed within 30 days of entry of the judgment. *See* Fed.R.App.P. 4(a)(1). Under Rule 4(a)(4) of the Federal Rules of Appellate Procedure, the time to appeal is extended by the timely service of motions under certain provisions of the Federal Rules of Civil Procedure, including a motion under Fed.R.Civ.P. 59(e) to alter or amend the judgment.

A Rule 59(e) motion, to be timely, must be served within 10 days after entry of the judgment. If a motion to modify or set aside the judgment (other than for clerical error, *see* Fed.R.Civ.P. 60(a)), is served more than 10 days after entry of the judgment, it is properly considered a motion under Fed.R.Civ.P. 60(b), not one under Rule 59(e). A Rule 60(b) motion does not extend the time for filing a notice of appeal from the judgment. *See* Fed.R.App.P. 4(a)(4).

Branum's motion for "reconsideration," seeking modification of the judgment to have the dismissal be without prejudice, was served on or after May 8, 1990. Since this was more than 10 days after entry of the April 20 judgment, the motion was a Rule 60(b) motion and did not extend his time to appeal from the judgment. The time to appeal from the judgment therefore expired on May 21. Branum's only notice of appeal was filed on September 21, 1990. His appeal thus is timely only with respect to the August 24 order.

### B. *Review of the August 24 Order*

An appeal from an order denying a Rule 60(b) motion brings up for review only the denial of the motion and not the merits of the underlying judgment for errors that could have been asserted on direct appeal.

*See Browder v. Director, Department of Corrections of Illinois*, 434 U.S. 257, 263 n. 7, 98 S.Ct. 556, 560 n. 7, 54 L.Ed.2d 521 (1978); *Sampson v. Radio Corporation of America*, 434 F.2d 315, 317 (2d Cir.1970); 7 *Moore's Federal Practice* ¶ 60.30[3], at 60–344 to 60–345 (2d ed. 1990). Accordingly, only the August 24 order, and not the April 20 judgment, is directly before us. The standard for review of the denial of a Rule 60(b) motion is abuse of discretion. *See Browder v. Director, Department of Corrections of Illinois*, 434 U.S. at 263 n. 7, 98 S.Ct. at 560, n. 7; *Sampson v. Radio Corporation of America*, 434 F.2d at 317; 7 *Moore's Federal Practice* ¶ 60.30[3], at 60–345 n. 6. A confluence of factors leads us to the conclusion that this standard is met here.

First, it is noteworthy that to the extent that the court dismissed the complaint under Rule 56, its ruling was inappropriate. In ruling on a motion for summary judgment, the court was required to draw all permissible inferences in favor of Branum as the nonmoving party. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Plainly it did not do so. Rather, the court inferred from exhibits 8 and 9 to the complaint that Branum had in fact been afforded whatever hearing due process required. The entire thrust of those two exhibits, however, whose authors were presumably objective members of the mathematics faculty, was that the scheduled hearing could not be a fair one because the immediate professional prospects of at least half of the committee members were dependent on persons against whom Branum's grievance was filed. In order to conclude from these documents that there was no dispute as to the university's having provided Branum with a proper hearing, the court could only have drawn inferences against Branum, not in his favor.

Second, to the extent that the court dismissed the complaint pursuant to Rule 12(b)(6), we are troubled by the fact that the dismissal was with prejudice. Though we would agree that it was proper

to require Branum (a) to comply with Fed. R.Civ.P. 8(a), which requires that a complaint set forth a plain and concise statement of the plaintiff's claim, and (b) to be more specific as to the conduct with which each defendant was charged, in order to give the defendants notice sufficient to enable them to answer and prepare for trial, such a dismissal ordinarily should be accompanied by leave to file an amended complaint. *See, e.g., Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988). Further, in ruling on the Rule 12(b)(6) motion, the court was required to accept the material facts alleged in the complaint as true, *see, e.g., Cooper v. Pate,* 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964) (per curiam); *Dwyer v. Regan,* 777 F.2d 825 (2d Cir. 1985), *modified on other grounds,* 793 F.2d 457 (2d Cir.1986), and not to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The latter principle is to be applied with particular strictness when the plaintiff complains of a civil rights violation, *see, e.g., Dwyer v. Regan,* 777 F.2d at 829; *Owens v. Haas,* 601 F.2d 1242, 1247 (2d Cir.), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979); *Escalera v. New York City Housing Authority,* 425 F.2d 853, 857 (2d Cir.), *cert. denied,* 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970), or where the plaintiff is appearing *pro se, see Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972). A *pro se* complaint is to be read liberally. *Id.* Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated. *See* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires"); 3 *Moore's Federal Practice* ¶ 15.08[4], at 15–65 (2d ed. 1990); *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (generally, permission to amend should be freely granted).

Although the district court stated in its August 24 order denying reconsideration that in construing the complaint it had given Branum "every benefit of the doubt," such treatment is nowhere evident. For example, as discussed above, the court treated Branum's due process claim as protesting only the denial of a hearing, not the denial of an unbiased hearing. Further, in stating that Branum had no property interest in continuing his education, the court did not mention New York law's recognition of "an 'implied contract' between [a college or university] and its students," requiring the "academic institution [to] act in good faith in its dealing with its students." *Olsson v. Board of Higher Education,* 49 N.Y.2d 408, 414, 426 N.Y.S.2d 248, 251, 402 N.E.2d 1150, 1153 (1980). Such an implied contract, recognized under state law, provides the basis for a property interest that would be entitled to constitutional protection. *See Perry v. Sindermann,* 408 U.S. 593, 601–03, 92 S.Ct. 2694, 2699–700, 33 L.Ed.2d 570 (1972). Though ordinarily the courts may not second-guess an educational institution's academic judgments, *see Regents of University of Michigan v. Ewing,* 474 U.S. 214, 225–28, 106 S.Ct. 507, 513–15, 88 L.Ed.2d 523 (1985), a Rule 12(b)(6) dismissal of a student's claim is improper where the contention is that the institution's action was "motivated by bad faith or ill will unrelated to academic performance," *see Clements v. County of Nassau,* 835 F.2d 1000, 1004 (2d Cir.1987). The district court appears to have ignored the complaint's assertion that defendants revived for Branum, and only Branum, a precondition abandoned a decade earlier as unsound, thereby permitting an inference of some nonacademic motivation. *See, e.g., Regents of University of Michigan v. Ewing,* 474 U.S. at 225, 106 S.Ct. at 513 ("substantial departure from accepted academic norms" may "demonstrate that the person or committee responsible did not actually exercise professional judgment").

Finally, there is no mention by the court, either in the April 20 transcript or in its two written orders, of Branum's claim of racial discrimination except to characterize it in the April 20 order as a "passing comment." Yet the GSO memorandum an-

nexed to the complaint stated that GSO had received reports that the unfavorable treatment of Branum was racially motivated; the complaint itself alleged that Branum had been unable to secure teaching and doctoral candidacy privileges commonly enjoyed by other graduate students because of his race; and the complaint stated that a Caucasian student had been treated more favorably with respect to securing a prompt and unbiased grievance proceeding.

Thus, the complaint plainly contained the seeds of several viable claims that were not discussed by the court. Though these flaws in the court's original judgment dismissing the complaint with prejudice are not directly before us on this appeal from the denial of the Rule 60(b) motion, they become material in light of the unusual procedural context in which the judgment was entered.

■ It was of course within the court's discretion to change the date of the hearing; but it was incumbent on the court to ensure that no party would be unduly prejudiced by that change. Here, the court sent Branum notice by certified mail on April 17, requesting a return receipt. We are at a loss to understand its reasoning on April 20 that the fact that "nothing ha[d] come back ... indicat[ed] that the letter was properly delivered to the plaintiff." It was hardly likely that the letter itself, even if ultimately undeliverable, would have been returned to the court in such a short time; and since the *return receipt* had not come back, there was no reason to infer that the notice had in fact been delivered. As it later transpired, delivery had not yet in fact been effected. In any event, we have serious doubts about the wisdom of proceeding with a hearing whose date has been advanced on extremely short notice, where that notice was by mail, and the court has not received a return receipt or any other indication that the *pro se* litigant has received the notice.

Further, since the court decided to proceed on April 20 in the absence of an indication that Branum had received notice of the change in date, it should have taken extra precautions to avoid prejudice to Branum

from the change in date. It would have been prudent, for example, to take the matter on submission on April 20 (as defendants suggested) and to hold the decision in abeyance until April 27, which apparently had been not only the date for the hearing but also the date by which Branum was to submit any opposition to the motion. Alternatively, if the court felt it must announce its decision immediately, it could simply have delayed entry of the final judgment until the previously scheduled date had arrived. We note in passing that if the court had refrained from entering final judgment until April 27, Branum's May 8 motion for reconsideration would easily have been timely as a motion under Rule 59(e), *see* Fed.R.Civ.P. 6(a) (when the period of time prescribed or allowed by the federal rules or local court rules is less than 11 days, intermediate Saturdays and Sundays are excluded in the computation), and would have tolled the time for the filing of the notice of appeal from the judgment, thereby permitting us to review the merits of the court's dismissal of the complaint.

■ In ruling on the motion to vacate the judgment, the district court did not give any consideration to the prejudicial impact on Branum of its advancement of the hearing date and its swift entry of order and judgment. Nor did it give adequate consideration to the fact that Branum had obtained counsel to appear on his behalf on April 27. We are confident that had Branum been represented by counsel at whatever hearing the court held, counsel would have been able (a) to persuade the court that summary judgment was entirely inappropriate, and (b) to bring to the court's attention the several potentially viable claims in the complaint that the court appears to have overlooked, and to persuade the court to grant permission to amend the complaint. Thus, we think it plain that Branum was prejudiced by the court's advancement of the date for the hearing and its failure to take available precautions to avoid that prejudice.

In light of the procedures leading to the entry of the judgment, the prejudice to Branum resulting from those procedures,

and the district court's failure to give any consideration to that prejudice in connection with the Rule 60(b) motion, we conclude that the court's failure to grant Branum relief from the judgment was an abuse of discretion.

## CONCLUSION

For the foregoing reasons, we vacate so much of the judgment as dismissed the complaint pursuant to Fed.R.Civ.P. 56; we modify so much of the judgment as dismissed pursuant to Fed.R.Civ.P. 12(b)(6) and direct that a new judgment be entered stating that the dismissal is without prejudice to the filing of an amended complaint within such reasonable period as the district court shall provide.