Arlene A. HUGHES, as Director of the Mental Hygiene Legal Service, Fourth Department, on behalf of William DAVID, Plaintiff,

v.

Mario CUOMO, as Governor of the State of New York; Thomas A. Maul, as Commissioner of the New York State Office of Mental Retardation and Developmental Disabilities; Fred F. Finn, as Director of the Oswald D. Heck/Eleanor Roosevelt Developmental Disabilities Service Office; and Barbara Hawes, as Director of the Sunmount Developmental Disabilities Service Office, Defendants.

No. 94–CV–6267L.

United States District Court, W.D. New York.

Aug. 31, 1994.

Dana Ragsdale, Mental Hygiene Legal Service, Fourth Judicial Dept., Rochester, NY, for plaintiff.

Carlos Rodriguez, Asst. Atty. Gen., Rochester, NY, for defendants.

## DECISION AND ORDER

LARIMER, District Judge.

Arlene A. Hughes, Director of the Mental Hygiene Legal Service, brings this action under 42 U.S.C. § 1983 on behalf of William David ("David" or "plaintiff"), who since 1986 has been a resident of the Monroe Secure Unit for Intensive Treatment ("MSU") at the Monroe Developmental Center in Rochester. Plaintiff contends that defendants' failure to place him in a less restrictive, community-based setting has violated his right to due process under the Constitution. He also alleges that defendants have violated the New York State Mental Hygiene Law. Plaintiff seeks declaratory and injunctive relief, and in particular, an injunction directing defendants to place him in a community treatment facility.

Defendants have moved to dismiss the complaint. They contend that the allegations in the complaint are insufficient to state a constitutional violation, and that the claim based on state-law violations is barred by the Eleventh Amendment.

### FACTS

The facts as alleged in the complaint, which the court must accept as true for purposes of this motion to dismiss, are as follows. David, who has been diagnosed as mildly mentally retarded, was arrested in

1980 on charges of sexually assaulting two children. He was found unfit to stand trial and was committed to the Mid–Hudson Psychiatric Center. He remained there until 1986, when he was accepted for treatment by the New York State Office of Mental Retardation and Developmental Disabilities ("OMRDD") and was admitted to the Oswald D. Heck Developmental Center ("Heck Center") in Schenectady County.

Shortly thereafter, David was transferred to MSU. This unit provides intensive treatment on a locked ward for developmentally disabled patients with other behavioral or emotional impairments. MSU accepts residents from throughout the state, and under OMRDD policy, residents are returned to the area from which they came when the MSU treatment team determines that the residents no longer need the type of treatment provided at MSU.

According to the allegations in the complaint, in early 1988, David's "treatment team," which apparently consisted of physicians and other health care providers, determined that he was appropriate for transfer out of MSU into a less restrictive, community placement setting with around-the-clock supervision.

David's treatment team has requested that defendants find an appropriate community placement for him near the Heck Center since around February 1988, but so far that has not occurred. In January 1993, defendants took some steps toward developing a plan to put David in a community residence, but that process has never gotten past the preliminary stages. At this point, the matter is at a standstill, and nothing is being done to put David in community placement.

## DISCUSSION

### 1. Standard on a Motion to Dismiss

■ In ruling on a motion to dismiss under Rule 12(b)(6), the Court must liberally construe the complaint in the light most favorable to the plaintiff. *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994), *petition for cert. filed,* (U.S. May 18, 1994) (No. 93–9204). The court must accept the material allegations of the complaint as true

and draw all inferences in favor of the pleader. *Id.* "Moreover, '[t]he district court should deny the motion [to dismiss] unless it appears to a certainty that a plaintiff can prove no set of facts entitling him to relief.'" *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1052 (2d Cir.1993) (quoting *Ryder Energy Distr. Corp. v. Merrill Lynch Commodities Inc.,* 748 F.2d 774, 779 (2d Cir.1984)), *petition for cert. filed,* 63 U.S.L.W. 3001 (U.S. June 21, 1994) (No. 93–2308). "This standard is applied with even greater force where the plaintiff alleges civil rights violations ..." *Hernandez,* 18 F.3d at 136; *accord Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991) (Rule 12(b)(6) standards "applied with particular strictness" in civil rights actions).

### 2. Due Process Claim

Relying on the Second Circuit's decision in *Society for Good Will to Retarded Children v. Cuomo,* 737 F.2d 1239 (2d Cir.1984), defendants argue that this action must fail because there simply is no constitutional right to community placement for residents of psychiatric facilities. The court in that case vacated a judgment entered after a bench trial in favor of a class of mentally retarded plaintiffs which ordered that 400 residents of a state school for the mentally retarded be released into community placement.

I do not read the court's decision in *Society for Good Will* as broadly as defendants, however. Although the court did state "that there is no such entitlement [to community placement]," *id.* at 1248, that statement must be read in context. The opinion as a whole makes clear that the court did not intend any sweeping declaration that there can *never* be any right to community placement. Rather, the court's decision was limited to its holding that "mere residence in an institution or school for the mentally retarded, *without more,* does not violate due process." *Id.* at 1247 (emphasis added).

The court then went on to explain what facts might establish a constitutional violation. Analyzing the Supreme Court's decision in *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the court stated that "due process is satisfied if

restraints are imposed on mentally retarded individuals in accordance with the judgment of qualified professionals ..." 737 F.2d at 1248. The court repeated that "constitutional standards are met when the professional who made a decision exercised 'professional judgment' at the time the decision was made." *Id.*

The court also clearly determined that judicial relief would be appropriate if professional judgment was not exercised. Quoting *Youngberg*, 457 U.S. at 323, 102 S.Ct. at 2462, the court stated that "the decision [to confine an individual], if made by a professional, is presumptively valid; *liability may be imposed* only when the decision by the professional is such a substantial departure from *accepted professional judgment, practice, or standards* as to demonstrate that the person responsible actually did not base the decision on such a judgment." 737 F.2d at 1248 (first emphasis added).

▪ As this statement suggests, the court's role in such a case is a narrow one. The court is not to determine "whether the optimal course of treatment as determined by some experts is being followed," *id.*, but "whether a decision to keep [the plaintiff in an institution] is a rational decision based on professional judgment." *Id.* at 1249. A court is not to attempt to determine the best course of treatment or choose between conflicting opinions as to the patient's care.

▪ Nevertheless, where it is alleged that no professional judgment has been exercised, the courts do have a role, albeit limited. If the decision to keep plaintiff confined is "such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment," *Youngberg*, 457 U.S. at 323, 102 S.Ct. at 2462, the court may order appropriate relief. *Society for Good Will*, 737 F.2d at 1249. Thus, if a patient were being held against his will contrary to all the medical evidence and expert medical opinion, there would clearly be a constitutional violation.

▪ In the instant case, giving plaintiff the benefit of every inference, plaintiff alleges that no professional judgment at all has

been made to keep him at MSU. Instead, he claims, all of the professional judgments that *have* been made have found that he is appropriate for, and should be placed in, a community setting. Defendants have offered no evidence to the contrary, and thus far have not given any reason why the recommendations of plaintiff's treatment team have not been followed. Surely if David is being detained against his will and contrary to the professional judgment of those charged with his care, a federal due process right is implicated.

Under these circumstances, I cannot find that "it appears to a certainty that [the] plaintiff can prove no set of facts 'entitling him to relief.'" *Herrmann*, 9 F.3d at 1052. If indeed the facts show that his continued confinement in MSU is not based on any professional judgment, relief may be warranted.

That is a matter which must await further discovery, however. At this point, I hold only that based on the allegations of the complaint, some set of facts could exist that would entitle plaintiff to relief, and that plaintiff has therefore stated a valid cause of action. Accordingly, the motion to dismiss the due process claim must be denied.

*3. Claim Under Mental Hygiene Law*

▪ In addition to the § 1983 claim, the complaint alleges that defendants have violated plaintiff's rights under the New York Mental Hygiene Law. Various sections of that law, as well as implementing regulations, provide that a mentally disabled person "shall receive treatment that is suited to his needs," and that he shall be placed in "appropriate facilities." Mental Hyg.L. §§ 33.03(a), 13.07(c). Plaintiff seeks a declaration from the court that defendants' actions have violated his rights under these statutes. Plaintiff also requests an injunction directing defendants to place him in an appropriate setting, although the complaint does not state whether that request is based on the § 1983 claim, the Mental Hygiene Law claim, or both.

Defendants move to dismiss this claim on the ground that it is barred by the Eleventh Amendment to the United States Constitu-

38

tion. Defendants rely primarily on *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), which held that the Eleventh Amendment bars a plaintiff from obtaining relief in federal court based on allegations that the state or its officials have violated state law. *See also Society for Good Will*, 737 F.2d at 1248; *Woe v. Cuomo*, 729 F.2d 96, 102 (2d Cir.), *cert. denied*, 469 U.S. 936, 105 S.Ct. 339, 83 L.Ed.2d 274 (1984).

In his brief, plaintiff appears to concede that injunctive relief based on alleged violations of state law is not available in this court. That is clearly the holding of *Pennhurst*.[1] I find that the claim for declaratory relief is likewise barred. "[T]he only advantage [plaintiff] could derive from such a declaration would be to present it in state court proceedings as *res judicata* on the issue of liability ... Here, issuance of a federal declaratory judgment as a step toward a state damage or injunctive remedy would operate as an end-run around *Pennhurst* that is equally forbidden by the Eleventh Amendment." *Benning v. Board of Regents of Regency Univ.*, 928 F.2d 775, 778 (7th Cir.1991); *see also Levine v. County of Westchester*, 828 F.Supp. 238, 242 (S.D.N.Y.1993) ("federal courts simply do not have jurisdiction to grant injunctive or declaratory relief pursuant to state law against state officials"; citing *Pennhurst*), *affd*, 22 F.3d 1090 (2d Cir.1994).

Defendants' motion to dismiss the state-law claim is therefore granted. Consequently, plaintiff may not seek injunctive relief on state-law grounds, but since plaintiff's request for injunctive relief was apparently based on both his federal and state claims, that prayer for relief is otherwise unaffected.

### CONCLUSION

Defendants' motion to dismiss the complaint is granted as to plaintiff's claim under the New York Mental Hygiene Law. That claim (the First Claim for Relief in the com-

---

1. The complaint itself indicates plaintiff's awareness of this fact, since it "invite[s] defendants not to assert any Eleventh Amendment privilege, if any exists, so as to resolve all issues between the

plaint) is dismissed. In all other respects, the motion to dismiss is denied.

IT IS SO ORDERED.

parties in this action and to avoid duplicative actions in Federal and State Courts." Complaint ¶ 6.