Henry W. MATHON, Plaintiff,

v.

Neil FELDSTEIN, Victoria Lomax, Diane Henson, Arthur Salm, James A. Bradley, Esq., Leslie Levine, Esq., Mark S. Reich, Esq., The Law Firm of Ackerman, Levine, Cullen & Brickman, LLP, Worldwide Automotive, LLC, Worldwide Automotive, LLC d/b/a Neil Honda & Neil Toyota Neil Buick Corp., Neil Lincoln Mercury Corp., "John Doe" One, "John Doe" Two, "John Doe" Three, "John Doe" Four, Jointly and Severally, Defendants.

No. 03–CV–2898 (ADS)(ETB).

United States District Court, E.D. New York.

Feb. 17, 2004.

---

Henry W. Mathon, Lindenhurst, NY, pro se.

Ackerman, Levine & Cullen, LLP, Great Neck, NY, by John M. Brickman, of Counsel, Attorneys for the Defendants.

**MEMORANDUM OF DECISION AND ORDER**

SPATT, District Judge.

Henry W. Mathon ("Mathon" or the "plaintiff"), proceeding *pro se,* commenced this action alleging, among other things, that the defendants violated 18 U.S.C. § 1961 *et seq.,* the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Presently before the Court is a motion to dismiss the amended complaint by all of the defendants for failure to state a claim pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ.P.") 12(b)(6). The defendants also request that the Court decline to exercise supplemental jurisdiction causes of action over the remaining causes of action which arise under state law pursuant to 28 U.S.C. § 1367(c)(3).

## I. BACKGROUND

### A. Factual Background

The facts are taken from the amended complaint and are taken as true for the purposes of this motion.

From 1999 through 2000, Mathon was employed by Neil Feldstein ("Feldstein") and Arthur Salm ("Salm") in various capacities at Feldstein's car dealerships. Sometime in the year 2000, Mathon resigned from his employment due to "abuse" by "Feldstein and Salm's right hand man." Am. Compl. ¶ 34.

In early 2001, while Mathon was employed elsewhere, Feldstein contacted Mathon by phone and requested that Mathon return to working for him. Mathon agreed to work as a used car manager at Feldstein's Honda dealership.

From mid-March, 2001 through the end of September, 2001, Mathon earned gross profits for the used car department in excess of $2 million and Mathon earned

$90,000 in salary and commission. Despite his success, Feldstein, Salm and Diane Henson ("Henson"), removed Mathon from the used car department for reasons unknown to Mathon. Feldstein, Salm and Henson replaced Mathon with other individuals and Mathon became a showroom manager.

After subsequent conversations with Feldstein and Henson by phone and in person, Mathon presented a plan relating to "Special Finance" in the automotive industry that he had been working on for the past three years. Feldstein and Henson subsequently told Mathon to put together a business plan for the "Special Finance Entity" in which Mathon would be a 40% partner.

The plaintiff claims that he entered into a "valid oral contract" with Feldstein, Henson and Salm by which the plaintiff would receive 40% and Feldstein, Salm and Honda would receive 60% of the newly created "Special Finance Entity." Feldstein represented by phone and in person that the "Special Finance Entity" would be implemented into Toyota, Buick, and Lincoln and would result in Mathon earning more than $500,000 per year. On or about November 8, 2001, Mathon, on his own time, began developing a business plan, advertising copy and layout, and a budget and estimate of start up costs which he subsequently presented to Feldstein, Henson and Honda on December 12, 2001.

During this time, the plaintiff was upset by some "rumblings" about him, namely that "individuals who were under the control of the enterprise a/k/a Feldstein, Salm, Henson, Lomax, Honda, Toyota, Buick, Lincoln and John Does were using the wire to discredit [his] reputation." Am. Compl. ¶ 51. Feldstein and Henson told Mathon to disregard what he had heard and instead "put his efforts into a new business that would benefit him as partner." Am. Compl. ¶ 53.

Feldstein and Honda agreed to the timing and directed Mathon to hire employees to implement the "Special Finance Entity." The "Special Finance Entity" produced gross sales in excess of $1 million with $120,000 in gross profit by February, 2002. However, Lomax, Feldstein, Henson, Salm and Honda took out 100% of the "expenses" out of the "Special Finance Entity" instead of the 60% originally agreed. Am. Compl. ¶ 70.

In mid-February, 2002, Lomax presented Mathon with a promissory note and threatened Mathon that if he did not sign the note, Mathon would not receive 40% of the "Special Finance Entity." Am. Compl. ¶ 71. Lomax used "coercion and constraint," Am. Compl. ¶ 72, and Feldstein used "undue influence with persuasion, pressure and short of actual force, but stronger than mere advice that so overpowered Mathon's free will," Am. Compl. ¶ 73, to force Mathon sign the promissory note. The plaintiff claims that Feldstein and Lomax used "extortion by obtaining . . . the promissory note as it was induced by wrongful use of actual and threatened force, and fear under color of official right." Am. Compl. ¶ 77.

After coercing the plaintiff to sign the promissory note, the defendants systematically "looked to push Mathon out from the profitable .. [Special Finance] Entity," Compl. ¶ 79, by cutting the budget and terminating key employees who were of "varied ethnicities, female and age." Am. Compl. ¶ 82. The plaintiff was subsequently fired "[b]y wire." Am. Compl. ¶ 84. Mathon wanted to "take action," Am. Compl. ¶ 86, but was warned by various people that Feldstein would "destroy him," id., in the automobile industry. Mathon indicates that he was also fearful of

Feldstein because Feldstein owned a firearm.

On or about June, 2002, Lomax demanded payment of the promissory note by phone and mail. Mathon refused and maintained that he did not owe any money to Feldstein.

In mid-October, 2002, Worldwide Automotive, LLC, d/b/a Neil Honda served the plaintiff with a summons and complaint to collect on the promissory note. *See Worldwide Automotive, LLC d/b/a Neil Honda v. Henry W. Mathon,* Index No. 02/014206 (Sup.Ct. Nassau County 2002) (J. Raab) (the "State Court Action"). That summons and complaint were prepared by the defendant Ackerman, Levine, Cullen & Brickman, LLP ("ALC & B") and signed by James A. Bradley ("Bradley"), an attorney with ALC & B.

Thereafter, Mathon spoke to Bradley and Levine, another attorney at ALC & B, by telephone about settling the case. Mathon claims that Bradley represented to and gave Mathon the impression that such telephone conversations served as an answer to the State Court Complaint. Because Mathon had not filed an answer, Neil Honda entered a default judgment and Mathon was served with a subpoena in aid of the enforcement of judgment. Mathon then moved by order to show cause to vacate the judgment. Several court appearances followed, where, outside the courtroom, Bradley allegedly threatened Mathon about "what Feldstein was capable of." Compl. ¶ 115. Bradley sent a letter to Justice Raab, who was then the presiding Justice, requesting that he rule on Mathon's motion to vacate the default judgment. Mathon immediately responded to Bradley's letter.

Mathon claims that "[b]y strong armed tactics and outright coercion, threats, extortion and collection of an unlawful debt by the practices of the employees and as-sociates of the Enterprise through a pattern of racketeering activities," Am. Compl. ¶ 122, the defendants have failed and refused to honor any and all contracts with regard to the "Special Finance Entity." Mathon further claims that the defendants' pattern is "an effort to destroy Mathon at any cost." Am. Compl. ¶ 124.

The complaint sets forth eight causes of action, including the following which arise under federal law: (1) civil RICO; (2) extortion and (3) employment discrimination. Presently before the Court is the defendants' motion to dismiss the above mentioned federal causes of action pursuant to Rule 12(b)(6) for failure to state a claim. The defendants also request that, pursuant to 28 U.S.C. § 1367(c)(3), the Court decline to exercise supplemental jurisdiction causes of action over the remaining causes of action for breach of contract, ethical violations, emotional distress and harassment, and "intentional interference with a prospective business advantage" which purport to arise under state law.

## II. DISCUSSION

### A. The Standard

#### 1. Rule 12(b)(6)

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court should dismiss the complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his complaint which would entitle him to relief. *King v. Simpson,* 189 F.3d 284, 287 (2d Cir.1999); *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). The court must accept as true all of the factual allegations set out in the complaint, draw inferences from those allegations in the light most favorable to the plaintiff, and construe the complaint liberally. *See Tarshis v. Riese Org.,* 211 F.3d 30, 35 (2d Cir.2000)

(citing *Desiderio v. National Ass'n of Sec. Dealers, Inc.,* 191 F.3d 198, 202 (2d Cir. 1999)). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995).

In addition, the Court must liberally interpret the complaint of a *pro se* plaintiff. *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Williams v. Smith,* 781 F.2d 319, 322 (2d Cir.1986). Nevertheless, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck,* 710 F.2d 90, 92 (2d Cir.1983) (citations omitted).

## B. Civil RICO

Under civil RICO, it is unlawful to participate in the conduct of an enterprise's affairs through a pattern of racketeering or to conspire to violate any of the substantive provisions of Section 1962. *See* 18 U.S.C. § 1962(c) & (d). 18 U.S.C. § 1964 creates a private right of action for individuals to enforce the RICO statute. Under this section, a plaintiff must prove an injury resulting from "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 491, 105 S.Ct. 3292, 87 L.Ed.2d 346 (1985); *see also Cofacredit, S.A. v. Windsor Plumbing Supply Co.,* 187 F.3d 229, 242 (2d Cir. 1999).

### 1. Pattern of Racketeering Activity

■ As stated above, a plaintiff must prove an injury resulting from, among other things, "a pattern of racketeering activity." "Racketeering activity" is defined as certain acts indictable under Federal law, including the predicate mail and wire fraud, 18 U.S.C. §§ 1341, 1343, and viola-

tions of the Hobbs Act, 18 U.S.C. § 1951. *See* 18 U.S.C. § 1961(1)(B). These predicate acts must be crimes under state or federal law, *United States v. Angelilli,* 660 F.2d 23 (2d Cir.1981), *cert. denied,* 455 U.S. 910, 102 S.Ct. 1258, 71 L.Ed.2d 449, *rehearing denied,* 456 U.S. 939, 102 S.Ct. 1998, 72 L.Ed.2d 460 (1982); *Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 995 (E.D.N.Y.1995).

■ To establish a pattern of racketeering activity, "a plaintiff must plead at least two predicate acts, show that the acts are related and that they amount to, or pose a threat of, continuing criminal activity." *H.J. Inc. v. Northwestern Bell and Telephone Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); 18 U.S.C. § 1961(5) (A "pattern" requires at least two acts of "racketeering activity" occurring within ten years of each other.); *United States v. Alkins,* 925 F.2d 541, 551 (2d Cir.1991) (predicate acts must be related and amount to or pose a threat of continued criminal activity). Thus, an allegation of two acts of "racketeering activity," without more, is not sufficient to establish a pattern. *See H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. at 238–44, 109 S.Ct. 2893, 106 L.Ed.2d 195; *United States v. Indelicato,* 865 F.2d 1370, 1381 (2d Cir.1989).

The plaintiff alleges the predicate acts of mail fraud, wire fraud, and extortion. However, as set forth below, the plaintiff fails to properly plead these predicate acts.

### a. Mail and Wire Fraud

■ Claims of mail and wire fraud must comply with Fed.R.Civ.P. 9(b). This rule provides that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." When the predicate

acts of a civil RICO claim are grounded in fraud, the concerns associated with pleading fraud with particularity take on even greater importance. *Plount v. Amer. Home Assur. Co.*, 668 F.Supp. 204, 206 (S.D.N.Y.1987). Accordingly, a claim of mail or wire fraud must specify the content, date and place of any alleged misrepresentation and the identity of the persons making them. *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172–73 (2d Cir.1990).

### i. Mail Fraud

As stated above, allegations of mail fraud must be made with the particularity required by Federal Rule of Civil Procedure 9(b). In discussing the predicate act of mail fraud, the Second Circuit has stated that

> Pursuant to this higher pleading standard, the "complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which the plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." ... Plaintiffs asserting mail fraud must also identify the purpose of the mailing within the defendant's fraudulent scheme.

*McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir.1992) (citations omitted).

The crux of mail fraud and wire fraud is "an intent to defraud." *United States v. Bouyea*, 152 F.3d 192, 194 (2d Cir.1998); *U.S. v. Gabriel*, 125 F.3d 89, 96 (2d Cir. 1997). To establish an intent to defraud, the plaintiffs must adequately allege that the "defendants contemplated some actual harm or injury to their victims. Only a showing of intended harm will satisfy the element of fraudulent intent." *United States v. Dinome*, 86 F.3d 277, 283 (2d Cir.1996).

The amended complaint alleges three acts by which mail was used: (1) In June, 2002, Lomax sent a demand for payment on the promissory note; (2) the summons and complaint for payment on the promissory note was sent by mail; and (3) the ALC & B law firm sent a letter to Justice Raab requesting that he rule on the plaintiff's order to show cause. Each of these mailings are directed to the defendants desire to be paid on the promissory note and relates to the State Court Action. In the Court's view, none of these mailings constitute a fraudulent representation.

Moreover, the plaintiff fails to satisfy the heightened pleading requirement set forth in Fed.R.Civ.P. 9(b) as the plaintiff fails to set forth "the content of the items mailed and specify how each of the items were false and misleading." *Official Publications, Inc. v. Kable News Co.*, 692 F.Supp. 239, 245 (S.D.N.Y.1988) *aff'd in part and rev'd in part*, 884 F.2d 664 (2d Cir.1989).

Accordingly, the plaintiff fails to allege the predicate act of mail fraud.

### ii. wire fraud

The elements of wire fraud are (1) a scheme to defraud and (2) use of interstate wire communication to further that scheme. *United States v. Lemire*, 720 F.2d 1327 (C.A.D.C.1983) (noting that the requisite elements of wire fraud 18 U.S.C. § 1343 are identical to those of mail fraud 18 U.S.C. § 1341). To plead wire fraud with particularity as required by Fed. R.Civ.P. 9(b), the plaintiff must identify the number of telephone calls that were made, the dates on which they were made, the identity of the persons making them, and the nature of the alleged misrepresentation. *Qantel Corp. v. Niemuller*, 771 F.Supp. 1361, 1369 (S.D.N.Y.1991); *see also Wexner v. First Manhattan Co.*, 902 F.2d 169, 172–73 (2d Cir.1990).

■ With regard to the plaintiff's reliance on wire fraud as a predicate criminal act, the amended complaint sets forth telephone conversations in which: (1) Feldstein contacted Mathon to return to work at Feldstein's car dealership; (2) the parties had conversations regarding the "Special Finance Plan"; (3) the plaintiff's employment with Feldstein's car dealership was terminated; (4) Lomax demanded payment on the promissory note; and (5) the plaintiff spoke with Bradley and Levine about settling the State Court case.

■ However, the plaintiff fails to identify the dates that these alleged conversations take place, where the phone calls took place and that during these phone calls, the defendants knowingly made false representations to the plaintiff. In addition, where, as here "all parties are New York residents, 'all telephone calls are presumed to be intrastate and, absent any indication otherwise, the predicate act of wire fraud is not stated.'" *Id.* (quoting *McCoy v. Goldberg,* 748 F.Supp. 146, 154 (S.D.N.Y.1990)); *see also DiFiore v. DiLorenzo,* No. 91–4209, 1997 WL 722697 at *4 (E.D.N.Y. Sept. 19, 1997); *United States v. Paredes,* 950 F.Supp. 584, 587 n. 3 (S.D.N.Y.1996). Invocation of the wire fraud statute requires an interstate telephone call. *Bernstein v. Misk,* 948 F.Supp. 228, 239 (E.D.N.Y.1997). Because all of the defendants are New York residents, and no interstate calls are alleged in the complaint, "it is unreasonable to assume that interstate use of the wires occurred." *Id.* Therefore the jurisdictional prerequisite has not been satisfied.

Given that any claims of fraud, including RICO claims based on mail and wire fraud, must be plead with particularity under Rule 9(b), *Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York,* 808 F.Supp. 213, 228 (S.D.N.Y.1992), Mathon's reliance on the predicate acts of mail and wire fraud must fail.

### b. Extortion

■ A plaintiff claiming a Hobbs Act violation, 18 U.S.C. § 1951, as a predicate act in a civil RICO claim must establish that the defendant "obstruct[ed], delay[ed], or affect[ed] commerce or the movement of any article or commodity in commerce, by ... extortion or attempt[ed] or conspire[d] so to do, or commit[ted] or threaten[ed] physical violence to any person or property in furtherance of a plan or purpose to do [so]." 18 U.S.C. § 1951; *see also McLaughlin v. Anderson,* 962 F.2d 187 (2d Cir.1992). To prove extortion under the Hobbs Act or New York law, Mathon has to show "wrongful means and wrongful objective." *See Andrea Doreen, Ltd. v. Building Material Local Union 282,* 299 F.Supp.2d 129, 154–56 (E.D.N.Y.2004); *Viacom Int'l Inc. v. Icahn,* 747 F.Supp. 205, 210 (S.D.N.Y.1990); *United States v. Enmons,* 410 U.S. 396, 419 n. 16, 93 S.Ct. 1007, 35 L.Ed.2d 379 (1973) (Extortion requires an intent to obtain that which in justice and equity the party is not entitled to receive.) (internal quotation omitted); *see also* New York Penal Law § 155.05(2)(e).

■ Mathon claims that Lomax presented Mathon with a promissory note and threatened Mathon that if he did not sign the note, Mathon would not receive 40% of the "Special Finance Entity." Am. Compl. ¶ 71. The plaintiff further claims in conclusory language that Feldstein and Lomax used "extortion by obtaining ... the promissory note as it was induced by wrongful use of actual and threatened force, and fear under color of official right" Am. Compl. ¶ 77, and that through "extortion", "strong armed tactics and outright coercion [and] threats," the defendants refused to honor the contracts with regard to the

"Special Finance Entity." Am. Compl. ¶ 122.

Mathon's conclusory allegations concerning the conduct of Feldstein and Lomax conduct with respect to the promissory note do not properly allege the predicate act of extortion. Rather, Mathon's allegations seem to demonstrate "hard bargaining" by Lomax and Feldstein. *See Center Cadillac, Inc. v. Bank Leumi Trust Co.,* 859 F.Supp. 97, 105 (S.D.N.Y.1994), *aff'd,* 99 F.3d 401 (2d Cir.1995) ("the use of economic fear as leverage to drive a hard bargain in an ordinary commercial relationship will not support a RICO claim based on extortion.").

The amended complaint fails to allege the date the alleged "extortion" occurred, the nature of the alleged threats and coercion, an effect on interstate commerce, and the purpose of the defendants alleged actions. *Zito v. Leasecomm Corp.,* No. 02 Civ. 8074, 2003 WL 22251352, at *11 (S.D.N.Y. Sept.30, 2003).

Because the amended complaint fails to allege a "pattern of racketeering activity," the plaintiff fails to set forth a cause of action under civil RICO. *See Agency Holding Corp. v. Malley–Duff & Assoc., Inc.,* 483 U.S. 143, 154, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) ("[T]he heart of any RICO complaint is the allegation of a pattern of racketeering."). Accordingly, the defendants' motion to dismiss the civil RICO cause of action is granted.

## C. Extortion

 In addition to the above mentioned alleged predicate acts of extortion, *see* B(1)(b), the plaintiff also asserts a separate cause of action for extortion under 18 U.S.C. § 871. Similarly, Mathon's cause of action under 18 U.S.C. § 871 must also fail as "extortion is a federal crime ... [and] there is no federal statute creating a private civil cause of action for extortion."

*Schwartz v. Adler,* No. 84 Civ. 2891, 1985 WL 2188, at *4 (S.D.N.Y. July 29, 1985). Therefore, this cause of action is also dismissed.

## D. Employment Discrimination

 In Count Eight of the amended complaint, the plaintiff alleges that the defendants "in malicious, discriminatory actions violated Mathon's rights secured by Federal Employment." Am Compl. ¶ 171. In particular, the amended complaint also alleges that the defendants terminated "key employees" who were of "varied ethnicities, female and age." Compl. ¶ 82. Although an employment discrimination complaint need not contain specific facts establishing a *prima facie* case under the framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), *see Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), "a complaint that contains only vague and conclusory claims with no specific facts supporting the allegations may not give the defendant fair notice of the claims against him and thus would not allow the defendant to devise a competent defense." *Hilska v. Jones,* 217 F.R.D. 16, 21 (D.D.C.2003) (citing *Swierkiewicz,* 534 U.S. at 514, 122 S.Ct. 992).

Thus, without more, these bare allegations cannot support a claim for employment discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* or any other federal or New York State Statute. *See Hilska,* 217 F.R.D. at 21; *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) (stating that "the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." (citations omitted)); *see also* Fed. R.Civ.P. 8(a)(2) (requiring that a complaint

contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."). Accordingly, this cause of action is also dismissed.

### E. New York State Law Causes of Action

The amended complaint includes New York State common law causes of action for breach of contract, ethical violations, emotional distress and harassment, and "intentional interference with a prospective business advantage." Am. Compl. p. 25. Having dismissed all of the plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over the plaintiffs state law claims. *See Arroyo v. City of New York, et al.,* No. 99 Civ. 1458, 2003 WL 22211500, at *3 (S.D.N.Y. Sept. 25, 2003) (citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).

### F. Leave to Amend

Rule 15(a) of the Federal Rules of Civil Procedure states that a party shall be given leave to replead when justice so requires. *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991); *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) (it is the usual practice upon granting a motion to dismiss to allow leave to replead). Leave to amend should be freely granted, "especially where dismissal of the complaint [is] based on Rule 9(b)." *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 54–55 (2d Cir.1995); *Luce v. Edelstein,* 802 F.2d 49, 56–57 (2d Cir.1986) ("Complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend." (citation omitted)). Here, the plaintiff already filed an amended complaint. However, because the amended complaint was filed pursuant to Fed. R.Civ.P. 15(a) ("amendment as of right"), the Court will grant the plaintiff leave to file a second amended complaint to correct the above mentioned pleading deficiencies.

The Court notes with approval Judge Leisure's thoughtful comments in *Spier v. Erber,* No. 89 Civ. 1657, 1990 WL 71502, at *10, n. 8 (S.D.N.Y. May 24, 1990).

It has become an all too common practice for litigants granted leave to replead to make only minor changes in the original complaint based on an overly restrictive reading of the dismissing court's order, prompting a second motion to dismiss. An amended complaint which fails to replead with sufficient particularity after a finding of lack of specificity may well be regarded by the Court as a frivolous filing in violation of Fed. R.Civ.P. 11. Conversely, a renewed Rule 9(b) motion after an adequate and thorough repleading can also be viewed as frivolous.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the defendants motion to dismiss the amended complaint is granted in its entirety; and it is further

**ORDERED,** that the plaintiff is granted leave to file an amended complaint within thirty days from the date of this order and that the failure to file within this time period will render the dismissal of all of the plaintiff's claims with prejudice, and it is further

**ORDERED,** that the Clerk of the Court is directed to serve a copy of this Order on the plaintiff, Henry W. Mathon, by regular first class mail and by certified mail, return receipt requested at the address Mathon indicated on his amended complaint: 830 Anthony Drive, Lindenhurst, New York 11757.

**SO ORDERED.**