RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0014P (6th Cir.)
File Name: 01a0014p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

RONALD R. SNOWDEN,
      *Plaintiff-Appellee,*

    *v.*

LEXMARK INTERNATIONAL,
INC.; DOUG LANDERS;
WAYNE MOORE; DUDLEY
GRAVITT; FRITZ STOLLGER,
      *Defendants-Appellants,*

GUARDSMARK, INC.,
      *Defendant-Appellee.*

No. 99-6216

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 97-00189—Henry R. Wilhoit, Jr., Chief District Judge.

Argued: December 5, 2000

Decided and Filed: January 11, 2001

Before: MERRITT, NELSON, and BATCHELDER,
Circuit Judges.

1

———————————

**COUNSEL**

**ARGUED:** Larry A. Sykes, STOLL, KEENON & PARK, Lexington, Kentucky, for Appellants. Charles W. Curry, Lexington, Kentucky, for Appellee. **ON BRIEF:** Larry A. Sykes, David C. Schwetschenau, STOLL, KEENON & PARK, Lexington, Kentucky, for Appellants. Charles W. Curry, Lexington, Kentucky, Thomas K. Herren, HERREN & ADAMS, Lexington, Kentucky, for Appellee.

———————————

**OPINION**

———————————

MERRITT, Circuit Judge. This civil case is brought under RICO, the Racketeer Influenced and Corrupt Organizations Act. Appellants are Lexmark, a manufacturer and retailer of computer printing products, and several employees involved in company security and management. Appellee Ronald Snowden is a former Lexmark employee. Lexmark alleges that Mr. Snowden stole computer chips from its warehouse and used them to distribute software via computer in violation of copyright laws. We agree with the District Court that appellants have failed to demonstrate a "pattern of racketeering." We therefore affirm summary judgment in favor of Mr. Snowden.

RICO was enacted as Title IX of the Organized Crime Control Act of 1970, Pub. L. No. 91-452, 84 Stat. 922 (codified as amended at 18 U.S.C. §§ 1961-1968). Section 1962(c) makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." In order to establish a RICO violation, a plaintiff must show 1) two or more predicate offenses; 2) the existence of an "enterprise"; 3) a nexus between the pattern of racketeering

Moreover, even assuming that Mr. Snowden violated copyright law, principles of fairness and prior notice militate against retroactive application of RICO penalties. To support their claim of racketeering, then, appellants at most can offer a single theft from an interstate shipment. We agree with the District Court that this cannot satisfy the "pattern" requirement imposed by RICO. Accordingly, the grant of summary judgment in favor of Mr. Snowden is AFFIRMED.

activity and the enterprise; and 4) an injury to business. *VanDenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696, 699 (6th Cir. 2000). The Supreme Court has described the pattern requirement as "the heart of any RICO complaint." *Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143, 154 (1987). The statute defines a "pattern of racketeering activity" as requiring

> at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity

18 U.S.C. § 1961(5). These instances of racketeering, listed at 18 U.S.C. § 1961(1), are known as "predicate acts."

## I. Facts

Lexmark is an international corporation with world headquarters in Lexington, Kentucky. There, it assembles computer printing products that incorporate single in-line memory module chips called "SIMMS." Lexmark also sells SIMMS chips directly to customers. Computer chips designated for resale are stored in a warehouse on company property. An inventory check in January 1996 revealed a number of missing units. Suspecting theft, Lexmark installed a video camera to monitor the storage area. On March 9, 1996, the camera recorded two men taking SIMMS chips from the warehouse. Lexmark management identified Ronald Snowden as one of the figures in the video and fired him in May 1996.

Until he was fired, Ronald Snowden was a 17-year employee at Lexmark who installed and repaired computer network server hardware. His interest in computers carried over into his personal life. He was a member of a computer "bulletin board service" called the "Assassin's Guild." A precursor of the Internet, a bulletin board service is an electronic forum connected by computers and modems that permits users to exchange files and text. The Assassin's

Guild was an especially popular board, known for allowing users to download, or "pirate," commercial software in violation of copyright laws. Through lawsuits and an eventual settlement, Microsoft and Novell forced the board to shut down in April 1995. Mr. Snowden also hosted his own bulletin board called "Transylvania 286." As system operator, he ran the network, monitored problems, and configured the hardware. Mr. Snowden ceased to maintain the board after December 1995 and completely shut it down in March 1996. J.A. 134.

On the basis of the warehouse surveillance tape, Mr. Snowden was indicted by a Fayette County grand jury for burglary and theft. Because the video's poor quality diminished its evidentiary value, however, the prosecutor later dismissed the charges. Mr. Snowden then filed a civil RICO complaint against Lexmark in Kentucky circuit court. Lexmark removed the case and filed a RICO counterclaim, alleging that Mr. Snowden stole the memory chips and used them to distribute computer software on the Assassin's Guild and Transylvania 286. According to Lexmark, Mr. Snowden's activity on these boards constituted criminal copyright infringement, which, along with the theft of the chips, formed a pattern of racketeering. Mr. Snowden abandoned his RICO claim and moved for summary judgment on Lexmark's counterclaim. The District Court granted the motion, and Lexmark now appeals.

Lexmark offers three predicate acts to support its claim of racketeering. It accuses Mr. Snowden of stealing SIMMS chips from interstate shipments in January and March of 1996 in violation of 18 U.S.C. § 659. It also charges Mr. Snowden with participating in criminal copyright infringement in violation of 18 U.S.C. § 2319. According to Lexmark, these three acts coalesce into a "software pirating operation." Appellant Br. at 13.

## II. Discussion

In interpreting 18 U.S.C. § 1961(5), the Supreme Court has developed a "continuity plus relationship" test by which

at 344 (5th ed. 1993). Since RICO is first a criminal statute that only piggy-backs civil remedies, it should be interpreted, for retroactivity purposes, as a criminal statute. *See, e.g.*, Michael S. Rafford, *The Private Securities Litigation Reform Act of 1995: Retroactive Application of the RICO Amendment,* 23 J. LEGIS. 283, 288 (1997) ("New burdens on past transactions are still unjust whether they be in the form of criminal or civil sanctions . . . . Statutes such as RICO, that contain both criminal and civil causes of action, illustrate the problems of only prohibiting retroactive criminal laws. The prohibition against ex post facto laws protects a RICO defendant charged with predicate acts of fraud, extortion and gambling when the suit is brought by the government. Nevertheless, when that same suit is brought by a private party, only a presumption against retroactivity exists. Moreover, the only difference may be the plaintiff since the government can seek injunctive as well as monetary relief against RICO defendants. The focus in both situations should be the conduct in question."). Though infringement was a criminal offense before 1996, its inclusion in the RICO scheme adds new layers of criminal sanctions and civil penalties not previously present. *See, e.g.*, 18 U.S.C. § 1964(c) (authorizing the recovery of treble damages under RICO). Thus, the amendment adding copyright infringement to RICO would clearly "increase a party's liability for past conduct" under *Landgraf*. Absent clear congressional intent, the judicial default rules outlined in *Landgraf* raise a presumption against retroactivity. Lexmark has not overcome this presumption. *Cf. Scott v. Boos*, 215 F.3d 940 (9th Cir. 2000) (refusing to apply the Private Securities Litigation Reform Act of 1995 retroactively, which amended RICO to remove securities fraud as a predicate act). *Accord Mathews v. Kidder, Peabody & Co., Inc.*, 161 F.3d 156 (3d Cir. 1998).

## III. Conclusion

To prevail on a RICO claim, a plaintiff must show two acts of racketeering activity as a "minimum necessary condition." *H.J. Inc.*, 492 U.S. at 237. The allegation that Mr. Snowden was involved in the January theft is wholly unsubstantiated.

attainder. Anyone who has engaged in the prohibited activities before the effective date of the legislation is on prior notice that only one further act may trigger the increased penalties and new remedies of this chapter.

S. REP. NO. 91-617, at 158 (1969).

Lexmark interprets this language as also authorizing retroactive application of amendments to RICO. It is true that Congress swept in acts committed before RICO's effective date of October 15, 1970, as predicate offenses. Appellants would extrapolate from the 1970 legislation to the 1996 amendment. But Lexmark fails to complete the analogy between the first passage of RICO and its subsequent revision. A RICO action could incorporate acts before October 15, 1970, only if the defendant *also* engaged in prohibited activities *after* that date. If the amendments are to reach back in the same manner as the original legislation, then they too must have the safeguard of "prior notice." In this case, Mr. Snowden's infringing activity before July 2, 1996—the effective date of the Anticounterfeiting Consumer Protection Act—cannot serve as a predicate act unless he *also* infringed *after* July 2, 1996. This he did not do. The Anticounterfeiting Act simply put him on notice that future copyright violations could trigger RICO and provide a basis for incorporating prior acts of infringement. Because Lexmark does not claim that Mr. Snowden committed any act of racketeering after July 2, 1996, the alleged infringement before that date cannot be included as a predicate act under RICO.

We agree with the District Court that Congress did not prescribe the reach of the Anticounterfeiting Act. Furthermore, we are unpersuaded that RICO's legislative history from 1970 now dictates retroactive application of the 1996 amendment when Mr. Snowden has not engaged in any racketeering after its effective date. Moreover, the Due Process and Ex Post Facto Clauses do not permit criminal penalties to be imposed retroactively. *See generally* NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 41.03,

otherwise disparate acts may be woven into a prohibited pattern of racketeering. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240 (1989). The pattern requirement of a RICO action is satisfied by showing (1) a relationship between the predicate acts and (2) the threat of continued activity. *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 229 (6th Cir. 1997) (citing *H.J. Inc.*, 492 U.S. at 240).

We need not probe the relationship among the predicate acts claimed in this case, however. Because Lexmark has failed to show even the existence of two predicate acts, we do not reach the question of their relatedness or continuity.

### A. The Missing SIMMS Chips

Lexmark's only proof of wrong-doing is the surveillance tape of the March theft. Mr. Snowden concedes that his identification in the video is sufficient to withstand summary judgment. Appellee Br. at 8. Viewing the facts in the light most favorable to Lexmark, we will concede that there may be a genuine factual dispute about whether the missing chips were taken from an "interstate shipment" as required by 18 U.S.C. § 659. Thus, for purposes of this summary judgment motion, Lexmark may properly claim the March theft as a RICO predicate act that implicates Mr. Snowden.

The same cannot be said for the other alleged theft. There is simply no evidence that Mr. Snowden stole Lexmark chips in January 1996. In fact, there is no evidence that *anyone* stole the chips. What Lexmark calls an "unexplained shortage" might just as well have been misplaced or misdelivered inventory. Appellants have not shown otherwise, instead speculating: "A logical inference is that the same persons who stole the SIMMS in March were also responsible for the similar theft from the same location in January." Appellant Br. at 11. This wholly unsubstantiated claim cannot serve as a predicate act, even at this stage in the proceedings. "To withstand a defense motion for summary judgment, [the plaintiff] must adduce some concrete evidence on which a reasonable juror could return a verdict in his favor." *Frank v. D'Ambrosi*, 4 F.3d 1378, 1384 (6th Cir.

1993) (affirming summary judgment against a RICO plaintiff who offered only "wild and unsupported statements" to support his claim) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)).

## B.  The Alleged Copyright Infringement

As a second predicate act, Lexmark also claims that Mr. Snowden participated in criminal copyright infringement. Mr. Snowden operated a bulletin board service called "Transylvania 286" and was a member of another board called the "Assassin's Guild."  The latter was known for distributing software in violation of copyright laws.  Lexmark does not claim a proprietary interest in the copyrights, however.  The only connection between Lexmark and the alleged infringement is its assertion that "it is logical to infer that at least some of the stolen SIMMS were utilized as components of the illegal BBSs [bulletin board services] which Snowden operated or participated in."  Appellant Br. at 14-15.  Lexmark further maintains "it is also likely that the stolen SIMMS were sold through Snowden's BBS." *Id*. at 15.

Even assuming that Mr. Snowden participated in computer piracy—and the facts are by no means clear concerning his involvement—this conduct does not bring him within reach of RICO.  Copyright infringement became a RICO predicate act as of July 2, 1996. *See* the Anticounterfeiting Consumer Protection Act of 1996, Pub. L. No. 104-153, § 3, 110 Stat. 1386 (adding criminal copyright infringement, 18 U.S.C. § 2319, to the list of RICO predicate offenses found at 18 U.S.C. § 1961(1)(B)).  Lexmark acknowledges that Mr. Snowden's alleged infringement took place before RICO was amended to include copyright violations. Appellant Br. at 17. According to Lexmark, though, the amendment should have retroactive effect, reaching back to subject Mr. Snowden's computing activities to RICO penalties.  It cites a case from New York for the proposition that because copyright infringement was unlawful before 1996, its inclusion under RICO "does not introduce a new crime." *Wiener v. Napoli*,

772 F. Supp. 109, 116 (S.D.N.Y. 1991) (penalizing bank fraud retroactively as a RICO predicate offense).

Significantly, *Wiener* was decided before *Landgraf v. USI Film Products*, 511 U.S. 244 (1994).  In *Landgraf*, the Supreme Court considered the scope of the 1991 Civil Rights Act, concluding that the petitioner was not entitled to a jury trial on a sexual harassment action commenced in 1989. Examining the "antiretroactivity principle" embedded in the Constitution, the Court observed:

When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach.  If Congress has done so, of course, there is no need to resort to judicial default rules.  When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.  If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Id*. at 280.

In this case, the District Court found that Congress had not indicated the reach of the Anticounterfeiting Consumer Protection Act.  Lexmark counters this legislative silence by suggesting that Congress intended a broad retroactive design for RICO as enacted in 1970.  Appellants argue that the definition of "pattern of racketeering activity" is backwards-looking by negative implication. *See* 18 U.S.C. § 1961(5). The Senate Judiciary Committee commented on this provision in 1969, noting:

One act in the pattern must be engaged in after the effective date of the legislation.  This avoids the prohibition against ex post facto laws, and bills of